**Elizabeth A. LANDIS, Appellant,**

v.

**DIVISION OF EMPLOYMENT SECURITY, Respondent.**

**No. 21757.**

Missouri Court of Appeals,
Southern District,
Division One.

Dec. 29, 1997.

David F. Barrett, Joplin, for appellant.

Ronnae L. Coleman, Kansas City, for Respondent.

CROW, Judge.

Elizabeth A. Landis ("Claimant") appeals from an order of The Labor and Industrial Relations Commission of Missouri ("Commission") denying her claim for benefits under the Missouri Employment Security Law, chapter 288, RSMo 1994, as amended.

The dispute began when Claimant filed a claim with the Division of Employment Security ("Division") averring her employment at Don Fleury and Associates ("DF & A") terminated because of "lack of work."

Division notified Doing Steel, Inc. ("DSI"), a former employer of Claimant, that its account "may be subject to charge for benefits paid" because Division's records showed DSI "reported paying wages to the claimant during the base period of the claim."

DSI protested the claim on the ground that Claimant "left employment with [DSI] . . . to take a new job."

The governing law is § 288.050, RSMo Cum.Supp.1996, which reads, in pertinent part:

"1. Notwithstanding the other provisions of this law, a claimant shall be disqualified for waiting week credit or benefits until after the claimant has earned wages for work insured pursuant to the unemployment compensation laws of any state equal to ten times the claimant's weekly benefit amount if the deputy finds:

(1) That the claimant has left work voluntarily without good cause attributable to such work or to the claimant's employer; except that the claimant shall not be disqualified:

(a) If the deputy finds the claimant quit such work for the purpose of accepting a more remunerative job which the claimant did accept and earn some wages therein;
...."

A deputy of Division determined: "The Claimant is disqualified ... because the Claimant left work with [DSI] voluntarily without good cause attributable to her work or employer on 07/10/96." The deputy found: "The Claimant quit because she accepted other work which she believed offered greater advancement opportunities. The work accepted was not more remunerative."

Claimant appealed the deputy's denial of the claim. Claimant's reason for the appeal was: "I believe I had good cause to quit as the job I accepted would have given me opportunities for greater earnings."

An Appeals Referee ("Referee") of Division conducted an evidentiary hearing at which Claimant and her former supervisor at DSI testified. Following the hearing, the Referee affirmed the deputy's denial of the claim. However, the Referee based his decision on findings different than those of the deputy. The Referee concluded:

"Under ... [§ ] 288.050.1(1)(a) ... a claimant shall be determined disqualified for unemployment insurance benefits when the claimant had left work voluntarily without good cause attributable to the work or to the employer, unless the claimant quit her job for the purpose of accept-ing a more remunerative job which she did accept and earn some wages therein.

In this case, the evidence shows that on July 10, 1996, the claimant voluntarily terminated her employment with [DSI] for the purpose of accepting other employment. The evidence also shows that the new employment did not materialize.

Therefore, it is concluded that the claimant is disqualified for unemployment insurance benefits...."

Claimant appealed the Referee's decision to Commission. In a two-to-one decision, Commission adopted the Referee's decision as the decision of Commission. This appeal followed.

This court's authority to review Commission's decision is conferred by § 288.210, RSMo Cum.Supp.1996, which reads, in pertinent part:

"... after a decision of the commission has become final ... any party aggrieved by such decision may appeal the decision to the appellate court having jurisdiction in the area where the claimant ... reside[s].... The commission shall notify the division [of employment security] of the commencement of the appeal, and, upon receipt of such notice, the division shall be a party to any judicial action involving any such decision.... Upon appeal no additional evidence shall be heard. The findings of the commission as to the facts, if supported by competent and substantial evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the appellate court shall be confined to questions of law. The court, on appeal, may modify, reverse, remand for rehearing, or set aside the decision of the commission on the following grounds and no other:

...

(3) That the facts found by the commission do not support the award; or

(4) That there was no sufficient competent evidence in the record to warrant the making of the award."

■ This court reviews the decision of Commission, not that of the Referee. *Cf. Burns v. Labor & Industrial Relations Com-*

*mission,* 845 S.W.2d 553, 554[1] (Mo. banc 1993); *Woodard v. Hudson Foods, Inc.,* 952 S.W.2d 331, 332–33[1] (Mo.App. S.D.1997). This opinion refers to the Referee's decision only because it was adopted by Commission.

We begin our account of the facts by setting forth those found by the Referee (and adopted by Commission) as to which there is no dispute. They appear in the next two paragraphs.

In June, 1996, Claimant was working in DSI's sales department. Her annual salary was $22,880. She had worked at DSI almost seven years.

Around June 20, 1996, Claimant accepted an offer of employment at DF & A. She gave DSI "four weeks notice." Her last day of employment at DSI was July 10, 1996.

The issues in this appeal arise from events that occurred after Claimant left DSI.

Claimant testified she began her new job at DF & A on July 15, 1996. According to Claimant, her starting salary there was $19,760. However, avowed Claimant, she was to receive "[s]omewhere around a $5,000 raise" after "[a]pproximately three months, perhaps six."

Claimant recounted that on August 1, 1996, she "had a car wreck" and "broke two vertebra." She was "off work for six weeks." Claimant's testimony continued:

"By the time I was released by my doctor to go back to work ... [DF & A] found out that they had employed an embezzler who had hurt them financially a great deal and I worked I think a matter of ... three weeks maybe for them before he ... laid me off."

In support of her testimony, Claimant presented the Referee a letter dated December 4, 1996, from the president of DF & A. It was received in evidence as Exhibit 1; a copy is attached at the end of this opinion.

1. DSI, which initially protested the claim, filed no brief.

2. As reported earlier, the deputy found Claimant's job at DF & A "was not more remunerative" than her job at DSI. The record does not

■ The first of Claimant's two points relied on avers there was no sufficient competent evidence in the record to support Commission's conclusion that Claimant's "new employment did not materialize." Claimant insists that the uncontroverted evidence was that she "began work with her new employer on July 15, 1996."

Division filed a brief in response to Claimant's brief.[1] Division's brief maintains that Commission's denial of the claim was correct in that "Claimant left her employment [at DSI] voluntarily for other work that was not more remunerative" within the meaning of § 288.050.1(1)(a), quoted earlier in this opinion.

In her reply brief, Claimant points out that Commission made no finding that the job she took at DF & A was not more remunerative than the job she left at DSI. Claimant emphasizes that Commission (by adopting the Referee's decision) found Claimant's job at DF & A "did not materialize," hence Commission never reached the issue of whether the DF & A job was more remunerative than the DSI job.

The dissenting member of Commission filed an opinion demonstrating he recognized that Commission never decided that the job at DF & A was not more remunerative than the job at DSI. The dissenter said:

"The [Referee] found that claimant's job with the second employer 'did not materialize.' The record does not support that finding. Claimant's uncontradicted testimony establishes that she accepted the job with the second employer and that she performed work for the second employer for five weeks. The dispositive question is whether the job with the second employer was more remunerative than the job with the first employer[ ²]."

The dissenter asserted that the question in the final sentence quoted above is answered by *Brandon v. Labor & Industrial Relations*

reveal the data on which the deputy relied in reaching that conclusion; however, it is evident the deputy did not rely on Exhibit 1 because the deputy's determination was made in November, 1996, and Exhibit 1 is dated December 4, 1996.

*Commission,* 759 S.W.2d 900 (Mo.App. E.D. 1988), which holds:

"The phrase 'more remunerative job' has been used to describe a job which yields to a worker more disposable income as well as a job which is 'rewarding ... profitable, gainful.' "

*Id.* at 901 (citing *Missouri Division of Employment Security v. Labor and Industrial Relations Commission,* 647 S.W.2d 893, 894–95 (Mo.App. E.D.1983)).

In addressing Claimant's contention that there was insufficient competent evidence to support Commission's conclusion that Claimant's employment at DF & A "did not materialize," we are mindful that an appellate court reviews the evidence in the light most favorable to the findings and decision of Commission and disregards all opposing and unfavorable evidence. *Burns,* 845 S.W.2d at 554–55[3].

Claimant correctly points out that her evidence regarding the DF & A job—her testimony and Exhibit 1—was uncontradicted. That evidence showed Claimant began work at DF & A on Monday, July 15, 1996,[3] and worked there until her "car wreck" on August 1, 1996. Although Claimant's testimony as to the amount of time she worked at DF & A after recovering from her injuries was ambiguous, the dissenting member of Commission apparently understood Claimant to say she worked approximately three weeks after her recovery before DF & A was compelled to "lay [her] off" for financial reasons.

We recognize that Commission was not required to believe Claimant, *Helm v. Labor and Industrial Relations Commission,* 654 S.W.2d 327, 328[1] (Mo.App. S.D.1983), or to believe Exhibit 1, even though Claimant's testimony and Exhibit 1 were uncontra dicted. *Chemtech Industries, Inc. v. Labor and Industrial Relations Commission,* 617 S.W.2d 121, 124[5] (Mo.App. E.D.1981). However, nothing in the record indicates Commission disbelieved that evidence. Commission adopted the Referee's findings regarding the employment Claimant accepted at DF & A. Those findings included this:

---

3. We take judicial notice that July 15, 1996, was a Monday. *Haller v. Shaw,* 555 S.W.2d 703,

---

"The claimant was hired by [DF & A] to work in its drafting department for an annual salary of $19,760, or $9.50 an hour. The job was to begin on July 15, 1996. After three months, the claimant was to be reviewed for a possible wage increase of $5,000 annually. The job was to be full-time, and the claimant was to work the same hours that she worked for [DSI]."

The Referee's decision yields no clue as to how he reached the conclusion (adopted by Commission) that Claimant's employment at DF & A "did not materialize," and we find no hint in the Referee's decision (or that of Commission) as to what the Referee (or Commission) meant by that finding.

The best we can do toward decoding the finding is to conclude it is susceptible to two interpretations.

First, the finding may constitute a factual determination that Claimant never reported to work at DF & A after leaving DSI on July 10, 1996, and that Claimant thus performed no work and earned no wages at DF & A. However, in order to so find, the Referee (and Commission) would have had to disbelieve Claimant's uncontradicted evidence— her testimony and Exhibit 1—that she commenced work at DF & A on July 15, 1996, and worked there several weeks (interrupted by her injuries on August 1, 1996).

Nothing in the record indicates the Referee (or Commission) disbelieved Claimant's evidence in that regard. Indeed, it is obvious that the Referee (and Commission) believed much of Claimant's evidence regarding the DF & A job, as the Referee (and Commission) found Claimant was hired by DF & A at an annual salary of $19,760; the amount testified to by Claimant and confirmed by Exhibit 1. Furthermore, the Referee (and Commission) found Claimant was to be reviewed for a possible wage increase of $5,000 annually after three months at DF & A, a finding consistent with Claimant's testimony and Exhibit 1.

704[1] (Mo.App.1977).

In *Geiler v. Missouri Labor and Industrial Relations Commission,* 924 S.W.2d 606, 609[9] (Mo.App. E.D.1996), the Eastern District of this Court held Commission may not arbitrarily ignore relevant evidence not shown to be disbelieved or noncredible. However, because of our disposition of this appeal (set forth *infra*), we need not decide whether Commission could properly ignore Claimant's evidence about commencing work at DF & A when the record is bare of any suggestion that Commission disbelieved such evidence.

The second possible interpretation of the finding that Claimant's employment at DF & A "did not materialize" is that the Referee (and Commission) believed that although Claimant began working at DF & A and earned wages there, her tenure was so brief that it did not satisfy § 288.050.1(1)(a).[4]

If the finding meant that, the finding is wrong as a matter of law. In *Brandon,* 759 S.W.2d at 900, a worker quit one job to take another. There, as here, the annual salary at the new job was less than the annual salary at the former job; however, the worker testified she was promised raises which would make her annual salary at the new job higher than the annual salary at the former job. *Id.* The new employer fired the worker after *three and a half work days. Id.* The appellate court held that if Commission believed the worker, she was entitled to employment security benefits, as the new job was more remunerative than the former job. *Id.* at 901–02.

Here, Claimant's evidence, if believed by Commission, is sufficient to support a finding that Claimant commenced employment at DF & A and earned wages there. If Commission believed that evidence, it is clear from *Brandon,* 759 S.W.2d at 901–02, that the instant case hinges on whether the DF & A job was more remunerative than the DSI job.[5]

Because we cannot ascertain whether Commission believed or disbelieved Claimant's evidence that she performed work at DF & A and earned some wages there, we cannot determine whether Commission correctly applied § 288.050.1(1)(a). For that reason, this case must be remanded to Commission for findings on: (1) whether Claimant performed work at DF & A and earned some wages there and, if Commission finds that issue in the affirmative, (2) whether the DF & A job was more remunerative than the DSI job. *Cf. DeLong's, Inc. v. Division of Employment Security,* 927 S.W.2d 877, 880–81[6] (Mo.App. W.D.1996).

As we understand Claimant's brief, she does not challenge Commission's finding that she voluntarily left her DSI job without good cause attributable to the work or DSI. We affirm that finding. Commission's conclusion that Claimant is disqualified for unemployment insurance benefits is reversed and the case is remanded to Commission for findings as specified in the preceding paragraph.[6] Upon making such findings, Commission shall determine anew whether Claimant is eligible for benefits.

GARRISON, P.J., and PREWITT, J., concur.

---

4. Section 288.050.1(1)(a), quoted earlier, requires, *inter alia,* that the worker accept the new job and "earn some wages therein."

5. The dissenting member of Commission found the DF & A job more remunerative than the DSI job. The dissenter reasoned that if Claimant received the $5,000 annual raise after three months at DF & A, her annual salary there would exceed her annual salary at DSI. As shall become apparent *infra,* our disposition of this appeal makes it unnecessary for us to decide whether the dissenter's conclusion is correct.

6. Because of the remand, we do not reach, and do not discuss, Claimant's second assignment of error.

479

## Don Fleury and Associates
### ◆◆◆
113 East Third Street Pittsburg, KS 66762
Phone 316-232-1742   800-349-9905   Fax 316-232-7960

December 04, 1996

To Whom IT May Concern:

Libby Landis was hired by our firm, Don Fleury &
Associates, Inc. in July of 1996. At that time we hired
Libby with the intention of starting her in the drafting
department to begin her training with our firm. She would
have advanced to fielding training with the intent of
equipping her with the background to open and manage every
aspect of the firm in the Joplin office. It is her desire
to obtain a Land Surveyor in Training Certification as
well as a future Registered Land Surveyors License.

Libby's starting annual wage was $19760.00. We had
planned to open the Joplin office within a 3 month period.
At that time wages would have been reviewed by Don to
compensate Libby for the increased responsibility and work
load. Estimated increase would have been around $5,000
per year.

However, circumstances within our firm permitted us from
opening our Joplin office. In September 1996, it was
discovered that an employee within our firm was and had
been embezzling funds from our accounts. We found it
difficult to meet our payroll expenses and had to lay some
employees off, Libby was one of them. We deeply regretted
letting her go but we had no choice. If in the future we
are able to fully recover, it is our intent to rehire
Libby.

Sincerely,

Don Fleury, President
Don Fleury & Associates, Inc.

Exhibit No.
C#1
96-27767