Bobby Sue LYELL, Plaintiff-Respondent,

v.

The LABOR AND INDUSTRIAL RELATIONS COMMISSION of Missouri, DIVISION OF EMPLOYMENT SECURITY, Defendants-Appellants.

No. 10421.

Missouri Court of Appeals, Springfield District.

July 13, 1977.

■

Rick V. Morris, Acting Chief Counsel, William W. Clinkenbeard, Counsel, Jefferson City, for defendant-appellant Division of Employment Security.

Charles B. Fain, Counsel, Jefferson City, for defendant-appellant Labor and Industrial Relations Commission.

James R. Reynolds, Ford, Ford, Crow & Reynolds, Kennett, for plaintiff-respondent.

Before BILLINGS, C. J., and HOGAN and FLANIGAN, JJ.

HOGAN, Judge.

This appeal is taken by the Labor and Industrial Relations Commission and the Division of Employment Security from a judgment and order of the Circuit Court of Pemiscot County holding that an award of a deputy, an appeals tribunal and the Industrial Commission denying employment security benefits to Bobby Sue Lyell was not supported by competent and substantial evidence within the meaning of § 288.210, RSMo 1969, V.A.M.S. Stripped of evidentiary and procedural detail, the record presents two questions for determination:

1. Is there competent and substantial evidence that the claimant failed to report for work on July 21, 1975, because she was unable to find a baby-sitter for her children?

2. If so, does it follow that the claimant was disqualified from receiving benefits because she voluntarily left her work without good cause attributable to her work or to her employer?

Answering both questions affirmatively, we reverse and remand with directions to reinstate the award of the Commission.

Bobby Sue Lyell worked about three years on the "motor line" at Emerson Electric's Motor Division plant at Kennett, Missouri. She was earning, she thought, $2.70 per hour "when I quit." Mrs. Lyell had had "an ulcer and a bad back and stuff like that, and it kept [her] off work quite a bit," but she had a baby-sitter of some sort, inferably a sister, until the summer of 1975. Her sister then "started hoeing cotton, and she got 2 kids, and with my 2 kids, they [fought] all the time, and [my sister] didn't want to take them in the field with her." The employer's records showed that Mrs. Lyell worked Friday, July 11, 1975, but did not report on the following Monday. On Wednesday, July 16, claimant went to the personnel manager's office and explained that she had been absent because she could not find a baby-sitter. The claimant doubted she could find a baby-sitter by the end of the week or by the end of the following week. The personnel manager "told [claimant] I would try to go along with her as long as we possibly could," and gave the claimant the name of a nursery. The personnel manager's testimony was that the claimant asked several times if the employer could fire her; she was told her employer had work for her, but because of a company rule, or "policy," it would be assumed she quit if she did not report on Monday, July 21. When the claimant did not report on July 21, the employee's records were made to indicate she had voluntarily quit.

Claimant's testimony at the appeals hearing, which she stresses here, was that she did not report on July 21 because, "I did not have a baby-sitter." Her recollection of what her employer had said was much the same as the personnel manager's, except that she stated her employment was terminated because "they [Emerson] told me they decided I automatically quit." However, the testimony continued:

"Q. On the day they told you that they considered you had automatically quit, could you have gone to work that day?

A. I did not have a baby-sitter. That is what I called in for.

Q. After that, have you ever found a baby-sitter?

A. No. After that I looked for a job. I haven't found one yet.

\* \* \* \* \* \*

Q. During the months of July and August you did not have a baby-sitter.

A. That's right. I told them after school started I could probably find one, and then I could probably make it, but they couldn't give me a layoff that long."

■ A threshold observation is appropriate. Appeals in employment security cases are governed by § 288.210, RSMo 1969, V.A. M.S., and that statute reads in pertinent part "[i]n any judicial proceeding . . . the findings of the commission as to the facts, if supported by competent and substantial evidence . . . shall be conclusive." This means that on appeal, the court reviews the record in the light most favorable to the findings of the Commission; the weight of the evidence and the credibility of the witnesses are matters for the Commission to decide, and when the evidence and the inferences therefrom are conflicting, resolution of the conflicting inferences rests with the Commission and its resolution is conclusive on the reviewing court. *Bradshaw v. Richardson Trucks, Inc.,* 467 S.W.2d 945, 947 (Mo. banc 1971); *Blackman v. Industrial Commission,* 491 S.W.2d 18, 22[1] (Mo.App.1973).

To address the dispositive questions directly, it is readily apparent that the Commission could reasonably have drawn the inference that the claimant left her work or failed to report for work because she could not find anyone to care for her children while she was working. Section 288.-050(1)(1), RSMo Supp.1975, of our Employment Security Law disqualifies a claimant

if "he has left his work voluntarily without good cause attributable to his work or to his employer." If the claimant's conduct falls within the interdiction of this phrase, the Commission's award was proper, even though the order denying benefits was couched in terms of "constructive abandonment" of the employment.

■ This brings us to the final question: If an employee terminates or abandons his employment because of the compelling pressure of parental obligation, has he quit "voluntarily without good cause attributable to his work or to his employer?" The trial court's judgment was based on the premise that a trier of fact was required by the evidence to find that the claimant failed to report because she was unable to find a baby-sitter; its conclusion was that Mrs. Lyell's obligation to care for her children constituted "good cause" and because she left under the compulsion of that obligation, she had not terminated her employment "voluntarily." We agree with the premise but not with the conclusion. Employment security or unemployment compensation statutes commonly contain disqualifying provisions couched in terms similar to the language of § 288.050(1)(1), RSMo Supp.1975. As might be expected the authorities are not uniform;[1] some decisions lay emphasis on the word "voluntarily," others upon the words "good cause," and in some cases special statutory provisions have required a seemingly aberrant result. However, in the absence of special statutory provisions, the present weight of authority holds that a worker who leaves his employment under compulsion of marital or parental obligation has left his work voluntarily without good cause because his reasons for termination lack the causal connection with his employment which is required by the statute. In *Bussmann Manufacturing Co. v. Industrial Commission,* ?

1. See authorities cited *Gray v. Dobbs House, Inc.,* Ind.App., 357 N.E.2d 900, 903, n. 1 (1976);

Annot., 35 A.L.R.3d 1129 (1971); Annot., A.L.R.2d 874 (1950).

S.W.2d 456 (Mo.App.1960), the employee quit her employment as a coil winder because of pregnancy. She asked for a leave of absence, which was refused; she was told, however, that when she wished to return to work, she would be rehired if employment was available. The claimant applied for work after her baby's birth and was told there was nothing for her to do. The Division of Employment Security awarded unemployment benefits, and the employer appealed. The claimant argued, and the trial court held that the termination of employment was involuntary. The Court of Appeals carefully considered and reviewed the language of § 288.050(1)(1). Acknowledging that an insured worker's decision to leave his employment might sometimes be said to be voluntary in the sense that the worker had willed it, and at the same time be involuntary because outward pressures had compelled it, the court finally concluded, 335 S.W.2d at 461, that the clause "voluntarily without good cause attributable to his work or to his employer" comprises a single factual standard which a claimant must negate in order to avoid disqualification and held that because the claimant's reason for termination was not work-connected, she was not entitled to benefits. The same result has been reached in other jurisdictions in cases involving a claimant's termination of his employment because of marital or parental obligations.[2] It is not necessary, for our purposes, to examine the rationale of those cases, nor others which might be cited. It is sufficient to say that upon the record presented, the claimant was disqualified because she left her work voluntarily without good cause attributable to her work or to her employer. Accordingly, the judgment of the trial court is reversed with directions to reinstate the award of the appeals tribunal

as affirmed upon denial of review by the Labor and Industrial Relations Commission.

All concur.

---

2.  See, e. g., *Gray v. Dobbs House, Inc.*, supra n. 1, 357 N.E.2d at 903, 904[1, 2] (inability to obtain a baby-sitter); *Carter v. Maine Employment Security Commission*, 356 A.2d 731 (Me. 1976) (quitting to join spouse in a distant city);

*Moore v. Bureau of Unemployment Compensation*, 73 Ohio App. 362, 56 N.E.2d 520 (1943) (quitting to join spouse in a distant city and to care for a family).