**Colleen SCHOMAKER,
Petitioner-Appellant,**

v.

**LABOR AND INDUSTRIAL RELATIONS
COMMISSION OF MISSOURI, and Division of Employment Security, and
United Missouri Bank of Kansas City,
Defendants-Respondents.**

**No. WD 35153.**

Missouri Court of Appeals,
Western District.

Aug. 8, 1984.

Steven L. Hobson, Legal Aid of Western Missouri, Kansas City, for petitioner-appellant.

Sharon A. Willis, Kansas City, Rick V. Morris, Catherine J. Barrie, Jefferson City, for defendants-respondents.

United Missouri Bank of K.C., pro se.

Before SOMERVILLE, P.J., and CLARK and BERREY, JJ.

BERREY, Judge.

Claimant for unemployment compensation appeals from a judgment by the circuit court, in favor of defendants, which affirmed the decision of the Labor and Industrial Relations Commission. Claimant

maintains that the circuit court erroneously affirmed the commission's decision because that decision is unsupported by competent and substantial evidence. Claimant also maintains that the circuit court erroneously assessed costs against her. The judgment of the circuit court is affirmed in part, and reversed in part.

■ The following statement of facts recognizes that courts reviewing administrative determinations, including those of the Division of Employment Security (DES) and the Labor and Industrial Relations Commission (Commission), are bound to consider all the evidence in the light most favorable to the Commission's ruling, when that decision is supported by competent and substantial evidence. Section 288.210, RSMo (1978); *Figas v. Labor and Industrial Relations Commission*, 628 S.W.2d 731 (Mo.App.1982); *Chemtech Industries v. Labor and Industrial Relations Commission*, 617 S.W.2d 121 (Mo.App.1981). This statement of facts draws on the facts set forth in the appeals referee's decision which was adopted by the Commission and those matters which were not contested by the parties at the hearing.

Claimant commenced employment as a securities coordinator in the employees' benefit section of United Missouri Bank of Kansas City on July 1, 1981. On February 12, 1982, claimant began an approved maternity leave. During the leave of absence, in accordance with the bank's policy, claimant's length of service with the bank remained unbroken and company paid benefits were maintained by the bank. During the leave of absence, claimant was eligible to maintain any group insurance or medical coverage she may have had by her payment of the regular premium. The record is silent as to whether she participated in these programs or whether she maintained them during her leave. During the leave she was not eligible for any salary except to the extent that she had accrued annual leave. Again, the record is silent concerning whether she had any accrued annual leave or whether she received any payment therefore. The bank's policy on re-employ-

ment was that an employee on maternity leave must notify:

> [T]he Personnel Department no later than 30 days from the date of termination of [her] pregnancy that [she] expect[s] to be able to return to [her] former position, if available, or to an equal position. [Her] failure to comply with this request will be cause to terminate the leave and [her] employment.

Claimant delivered her child on February 15, 1982. On March 15, 1982, claimant notified the bank of her intention to return to work in early April. She was advised by Mr. Raymond Fuller of the personnel department that she would need a doctor's release when she was ready to return to work. Claimant had a doctor's appointment for April 6 at which time she obtained the release, and she reported back to the bank's personnel department for work on April 7, 1982.

Upon her return, her old job having been filled, Mr. Fuller first had claimant interview for the position of a "CRT operator" in the bank's bond area. She declined this job because her only means of transportation, the bus, did not operate in her neighborhood early enough to get her to work on time. She was next interviewed for a position as a "blotter clerk" in the check collection department. That position, however, was eliminated by management in a cost-cutting move.

On April 13, 1982, claimant made her initial claim for unemployment benefits which was effective for the week beginning April 11, 1982. She returned to the bank for an interview on or about April 23, 1982. At that time, Mr. Fuller arranged for her to interview with Mr. Waterman for the position of "commercial receiving teller." The job involved verification of commercial deposits by counting cash and comparing it to the accompanying deposit slip. The hours were approximately 8:00 a.m. to 4:30 p.m.; her previous working hours are not reflected in the record. The pay was $4.19 per hour; claimant's pay as a security coordinator had been $4.56 per hour. After discussing the job with claimant Mr. Water-

man asked if she was "interested in the job." She said, "No." Mr. Waterman did not formally offer her the job or order her to accept it.

After talking with Mr. Waterman, claimant returned to see Mr. Fuller. Mr. Fuller indicated he had received a letter from the unemployment office. On April 23, 1982, Mr. Fuller wrote to the DES advising them that claimant had been "terminated" on April 23, 1982. Claimant learned of this when she visited the unemployment office the following week.

Pursuant to Mr. Fuller's letter, a DES deputy disqualified claimant for benefits for the week beginning April 18, 1982, for the reason that she had, without good cause, failed to accept work with the bank. Claimant appealed to the appeals tribunal of the DES, and a hearing was held on July 19, 1982. The appeals referee modified the deputy's determination in finding that claimant "voluntarily left her work on April 23, 1982, without good cause attributable to her work or to her employer," rather than her failure "without good cause to accept available, suitable work" offered by a former employer. Nevertheless, the appeals referee affirmed the disqualification. Upon review by the Labor and Industrial Relations Commission, the case was remanded to the appeals referee for "a new hearing due to the inadequacy of the transcript of the first hearing" apparently because of a recording malfunction at the first hearing. The new hearing was held November 19, 1982. Acting upon the record of that hearing, the Commission denied claimant's application for review on March 16, 1983. A petition for review was filed in the Circuit Court of Jackson County, which affirmed the decision of the DES and the Commission on July 8, 1983. Claimant filed her appeal to this court on August 17, 1983.

■ Claimant first argues that the decision of the Commission was erroneous because it is not supported by competent and substantial evidence. This point is denied.

As aforementioned, the bank's policy regarding resumption of work following maternity leave is that an employee returns to her "former position, if available, or to an equal position ...." Since claimant's initial position was no longer available, other equal positions were discussed with the logical intent that they would be formally offered to claimant if she was interested. This accorded with the bank's policy of making the "preferences and capabilities of the employee as well as the requirements of the departments involved ... prime considerations" when transferring an employee from a job in one department to another.

Claimant refused to consider the position of "CRT operator" because of transportation difficulties associated with this new work schedule. Her objection to this position is without merit. In *Woolridge v. Labor and Industrial Relations Commission*, 643 S.W.2d 317, 319 (Mo.App.1982), this court held, that an "inability to find transportation ... [to work] ... was in no way attributable to ... [claimant's] work or to his employer, and under the statute ... [claimant] must be held to have left his job voluntarily."

Nevertheless, Mr. Fuller had claimant interview for a second, viable position of "commercial receiving teller" on April 23, 1982. She also declined to consider this position. Apparently, her decision was based on information she received from another bank employee that the job was "not good" and that "they just dug up anything they could."

After declining to consider this second position, claimant spoke with Mr. Fuller who had just received notice from DES that claimant had applied for unemployment benefits. Following his discussion with claimant, Mr. Fuller concluded that she was not interested in resuming work at the bank. Mr. Fuller responded by letter to the DES that claimant terminated her employment on April 23, 1982.

Claimant's rejection of two positions equivalent to her pre-leave position and her application for unemployment benefits was reasonably interpreted by Mr. Fuller as a voluntary separation from work. *See*

*Bergmann v. Labor and Industrial Relations Commission,* 604 S.W.2d 811 (Mo. App.1980) (claimant's actual or potential unavailability for full-time employment can be construed by employer as a resignation). There is competent and substantial evidence that claimant voluntarily separated from the bank's employ without good cause. Thus, claimant was properly disqualified for unemployment benefits for the week beginning April 18, 1982.

■ Claimant next argues that the circuit court erroneously assessed court costs against her. This point is well taken.

Section 288.380.5, RSMo provides:

No individual claiming benefits shall be charged fees of any kind in any proceeding under this law by the division, or by any court or any officer thereof.

As stated in *Woolridge v. Labor and Industrial Relations Commission, supra* at 319:

Section 288.380.5 prohibits the charging of fees of any kind in any proceeding under this law by the division, or by any court or any officer thereof, and thus the circuit court was without power to assess costs against *Woolridge.*

The same is true in this case.

The judgment affirming the decision denying benefits is affirmed. The judgment assessing costs against claimant Schomaker is reversed.

All concur.