Susan A. PRICE, Respondent,

v.

**LABOR AND INDUSTRIAL RELATIONS COMMISSION OF MISSOURI,**

and

**Division of Employment Security, Appellants.**

**No. WD 44162.**

Missouri Court of Appeals, Western District.

June 18, 1991.

Sharon A. Willis, Kansas City, Sandy Bowers, Jefferson City, for Div. of Employment Sec.

Victorine R. Mahon, Jefferson City, for Labor and Indus. Relations Com'n of Missouri.

Samuel I. McHenry, Legal Aid of Western Missouri, Kansas City, for respondent.

Before KENNEDY, P.J., and SHANGLER and ULRICH, JJ.

PER CURIAM:

Claimant Susan A. Price sought unemployment benefits, and a deputy of the Missouri Division of Employment Security (DES) found that she was disqualified from receiving unemployment benefits because she voluntarily quit her job without good cause attributable to her work or her employer. Claimant appealed to the Appeals Tribunal, which affirmed the deputy's decision after a hearing. Ms. Price then sought review by the Labor and Industrial Relations Commission (Commission), which, by a two to one majority, found that the decision of the Appeals Tribunal was supported by competent and substantial evidence. Ms. Price then appealed to the Circuit Court of Jackson County, and the court held that the Commission's decision was *not* supported by competent and sub-

stantial evidence, that Ms. Price did not leave her job voluntarily, and remanded the case to the Commission to determine appropriate benefits.

Both the Commission and DES appeal claiming the circuit court erred in reversing the decision of the Commission. The issue presented is whether the administrative record as a whole contains competent and substantial evidence supporting the Commission's decision that Ms. Price was not discharged by her employer and that she left her employment voluntarily and without good cause attributable to the work or the employer. The circuit court's judgment is reversed, and the decision of the Commission is affirmed.

The facts, as taken from the Appeals Tribunal findings, disclose that Ms. Price had worked for approximately eight or nine years for Things Remembered, Inc., a company that owned several jewelry and gift shops within the Kansas City metropolitan area. She had been a store manager for the last seven and one-half years. She had managed a total of three stores within the Kansas City area for Things Remembered, Inc., and at the time that this dispute arose she was managing the store at the Independence Mall. The company's policy required that all store employees, including the manager, work at least two nights a week, beginning at 1:00 p.m. and working until closing. Normal closing time was approximately 9:00 p.m. As store manager, Ms. Price scheduled when she and all other store employees worked. Following company policy, Ms. Price had worked two nights a week for three to four years until September 19, 1988, when she began maternity leave.

Ms. Price returned from maternity leave on November 21, 1988. Because of the Christmas retail season, which began the day following Thanksgiving and continued until December 24, the store stayed open until approximately 9:30 p.m. daily. Soon after she returned to work, the district supervisor learned that Ms. Price had been scheduling herself to work only shifts from 9:00 a.m. to 5:00 p.m., five days per week. On Friday, December 2, 1988, the district supervisor discussed with Ms. Price her failure to schedule herself for work two nights per week since her return from maternity leave. Ms. Price advised her supervisor that she could not work evenings because she had to care for her baby after 5:00 p.m. due to the fact that she did not have child care for her infant after 5:00 p.m. The district supervisor then offered Ms. Price an engraver position that would have required her to work only daytime hours. Ms. Price refused that position because it was a full-time position during the Christmas season only, then reverted to a part-time position. Moreover, the rate of pay as an engraver was much less than Ms. Price had been earning as store manager.

On Saturday, December 3, 1988, the district supervisor spoke with his superior in St. Louis concerning Ms. Price. The employer determined that its policy requiring employees, including store managers, to work two evenings per week would be adhered to during the Christmas season.

On Sunday, December 4, 1988, the district supervisor spoke to Ms. Price by telephone and informed her that an engraver position was the only daytime position available and that position was full time only through the Christmas season. The district supervisor told Ms. Price that, if she could work through the Christmas season in compliance with company policy requiring her to work two nights per week, her situation could be reviewed in January. The supervisor testified that Ms. Price then said that "she would prefer that [he] just terminate her employment and end the thing because she did not want to take a step down," in pay or in hours.

Ms. Price did not return to work after this conversation with the district supervisor. She received an "Employee Separation Report" from the supervisor, who checked the box on the form indicating that she had been "Discharged" and explained in the remarks section that Ms. Price, "was unable or unwilling to work any hours other than 9 to 5 (no evenings) therefore did not meet basic requirements as stated in the Store Operating Standards."

A copy of the company's Store Operating Standards was admitted at the hearing before the Appeals Tribunal, and Ms. Price acknowledged that she had been aware of the relevant clause requiring her to work two nights per week during her employment. The written policy stated:

3. The Store Manager must be scheduled to work 40 hours per week, including:
- two evenings per week (high volume evenings),
- every Saturday and Monday,
- one Sunday per month, where applicable.

Any exception to the above requires prior approval by the District Manager.

■ This court reviews the Commission's decision, not the findings of the circuit court. *Francis Howell School Dist. v. Labor & Industrial Relations Comm'n*, 687 S.W.2d 681, 683 (Mo.App.1985). Section 288.210, RSMo 1986, limits judicial review of a decision by the Commission to determining whether that decision is supported by competent and substantial evidence on the record as a whole. *See, Schomaker v. Labor & Industrial Relations Comm'n*, 675 S.W.2d 450, 451 (Mo.App. 1984). In this case, the Commission adopted the Appeals Tribunal's findings of fact. These findings of fact, if supported by competent and substantial evidence, are conclusive in the absence of fraud, and this court's review is confined to questions of law. *Id.*

In applying for unemployment benefits, the burden is on the claimant to prove that she left employment for good cause attributable to her work or her employer. *Missouri Div. of Employment Sec. v. Labor & Industrial Relations Comm'n*, 739 S.W.2d 747, 749 (Mo.App.1987). The Commission determines the weight and credibility of the evidence, and, when that evidence conflicts, the Commission's determination of the facts is conclusive. *Lyell v. Labor & Industrial Relations Comm'n*, 553 S.W.2d 899, 901 (Mo.App.1977).

■ On appeal, Ms. Price contends that she was discharged by her employer and is, therefore, eligible for unemployment benefits. Ms. Price notes that the company characterized her employment termination as a "discharge" in the "Employee Separation Statement" prepared by her district supervisor. While the terms that the parties use to describe cessation of an employee's employment may be instructive, the relevant facts and circumstances are controlling. *See, Schomaker*, 675 S.W.2d at 452 (Employer sent letter to DES advising that claimant had been "terminated," but the court upheld the DES' subsequent finding that claimant voluntarily left work without good cause). Ms. Price also argues that she was presented with a "work-or-leave" ultimatum which constituted discharge and that any finding to the contrary is not supported by the record. *See Francis Howell School Dist.*, 687 S.W.2d at 685 (citing *Diversified Case Co., Inc.*, 263 N.L.R.B. No. 119, 111 LRRM 1145 (1982)). In *Diversified Case Co., Inc.*, two employees threatened absence from their jobs after lunch and, indeed, did not return after lunch. In response to their threat, their manager stated that failure to return would end their employment. When the employees returned to work the following day the manager refused to allow them to work. The N.L.R.B. determined that the employees return the next day evidenced their intent not to quit and, therefore, held that the employer discharged them. However, Ms. Price's district supervisor testified at the Appeals Tribunal hearing that, when he offered her the daytime engraver job to accommodate her need to work no later than 5:00 p.m. daily, she told him, "she would prefer that [he] just terminate her employment and end the thing because she did not want to take a step down." This evidence supports the Commission's finding that Ms. Price was not presented with a "work or leave" ultimatum.

The record shows that the company attempted to accommodate Ms. Price and still adhere to company policy. Ms. Price, as store manager, scheduled herself to work between 9:00 a.m. and 5:00 p.m. daily and avoided working the two evenings each week that were required by company poli-

cy. She did this because she was unable to find child care for her infant daughter after 5:00 p.m. daily. The district supervisor told Ms. Price that she would have to comply with company rules and work two evenings per week. However, he suggested that she schedule herself to work Sunday evenings because the store closed at 6:00 or 7:00 p.m. on Sunday, which would permit her to be home earlier and would require that she work only one other evening each week. The district supervisor encouraged Ms. Price to work through the busy Christmas season, and stated that on January 1 her situation could be re-evaluated. Ms. Price responded that she could not work any evenings. The district supervisor then tried to provide Ms. Price another position that did not require her to work evenings. Ms. Price refused the offer, stating that she did not want her pay or number of hours reduced.

In *Rothschild v. Labor & Industrial Relations Comm'n,* 728 S.W.2d 720 (Mo.App. 1987), the court affirmed the Commission's finding that an employee did not have good cause to quit her job. *Id.* at 722. Like Ms. Price, the employee in *Rothschild* desired to alter her work schedule. *Id.* at 721. The employee's work schedule in *Rothschild* required her to work Monday through Saturday from 9 a.m. to 5 p.m., with Tuesday off. *Id.* Her employer agreed "to try" a schedule change at her request so that she had one week off per month. *Id.* About five months later, the employer requested that claimant return to her original work schedule. *Id.* Claimant refused to do so, and her employer then offered claimant the opportunity to work one day per week. *Id.* Claimant refused the employer's request to return to her original work schedule, and she declined the employer's offer to allow her to work one day per week. *Id.* Claimant's employment was terminated. *Id.* The court affirmed the Commission's findings that claimant's refusal to return to her original work schedule and, alternatively, her refusal to work one day per week after her employer found the tentative change in her original work schedule unsatisfactory were unreasonable. *Id.* at 722. *See also Lyell,*

553 S.W.2d at 902. (Inability to obtain baby-sitter is not good cause attributable to employer).

The record contains competent and substantial evidence to support the finding that Ms. Price, by refusing to appear for work two evenings per week as required by a reasonable, pre-existing company policy, voluntarily quit her job without good cause attributable to her work or her employer. Ms. Price refused to work the hours required of her management position, and she refused temporary alternative employment as an engraver. Thus, she voluntarily declined to appear for work when required. Ms. Price was not discharged by her employer, she terminated her employment without good cause attributable to her work or her employer.

The judgment is reversed and remanded, with directions to reinstate the decision of the Labor and Industrial Relations Commission.