Michaelangelo LASHEA, Employee/Respondent.

v.

FIN–CLAIR CORPORATION, Employer/Appellant,

No. ED 77850.

Missouri Court of Appeals, Eastern District, Division One.

Oct. 31, 2000.

238

John P. Brown, St. Louis, for appellant.

Michaelangelo Lashea, St. Louis, pro se.

Cynthia A. Quetsch, Jefferson City, Larry R. Ruhmann, St. Louis, for respondent.

ROBERT G. DOWD, Jr., Presiding Judge.

Fin–Clair Corporation ("Employer") appeals from the order of the Labor and Industrial Relations Commission ("Commission"). The Commission entered a decision finding Michaelangelo Lashea ("Employee") was entitled to unemployment compensation benefits. Employer contends the Commission erred because Employee failed to present competent and substantial evidence that he voluntarily left his employment with good cause attributable to his work or his employer. Because we do not find that Employee had good cause, attributable to his work or to his employer, to quit his job voluntarily, we reverse the decision of the Commission.

Employer is a metal finishing company. Employee worked for Employer for three years as a scale operator. Employee was a member of a union. Employee was originally hired by Employer to work a shift from 7:00 a.m. to 3:00 p.m. Employer informed Employee that the schedules were being changed "to meet the needs of the business ." Employee was given an opportunity to choose between a 4:00 a.m. to 1:00 p.m. shift or an 8:00 a.m. to 5:00 p.m. shift.

Upon receiving the schedule change, Employee told his supervisor that the change in shifts would be a problem for him. Employee could not consider the 4:00 a.m. to 1:00 p.m. shift because he relied on public transportation and there would be no transportation available at that hour of the morning. Employee also had arrangements to pick up his three-year-old child from the daycare provider at 4:00 p.m. and no later than 4:15 p.m. so the child's daycare provider could go to her other job. The supervisor told Employee that Employer would make an effort to accommodate him by allowing him to leave at 4:00 p .m. to pick up his child, and that Employee should try to make arrangements with other scale operators to cover the last hour of his shift. Employee worked for approximately one week on the 8:00 a.m. to 5:00 p.m. shift. Thereafter, Employee submitted a resignation letter to Employer stating his reason as, "because of working conditions I hereby submit my resignation."

Employee sought unemployment benefits. A deputy of the Division of Employment Security determined that Employee was disqualified for benefits, finding Employee voluntarily left employment with Employer without good cause attributable to his work or his employer. Employee appealed the decision to the Appeals Tribunal. Employee argued to the Appeals Tribunal that the change in shifts was not in compliance with his employment contract and not covered by the collective bargaining agreement and, therefore, should not be enforceable against him as a member of the union. After the hearing, the Appeals Tribunal reversed the deputy's decision and found that Employee was not disqualified for waiting week credit or benefits because Employee demonstrated good cause attributable to his work or to his employer for voluntarily leaving his employment. The Appeals Tribunal concluded Employee had shown good cause because the change in shifts prevented Employee from picking up his child by 4:00 p.m. The Appeals Tribunal did not specifically address Employee's contention that Employer's shift change violated his

employment contract.[1]

Employer sought review by the Commission. The Commission, by a two to one majority, found that the decision of the Appeals Tribunal was supported by competent and substantial evidence and adopted the decision of the Appeals Tribunal. This appeal follows.

■ In its sole point, Employer contends the Commission erred in finding Employee was not disqualified for waiting week credit or unemployment benefits because there was not competent evidence that Employee voluntarily left his employment for good cause attributable to his work or his employer. Employer argues Employee's voluntary resignation was based upon his parental obligations, and he failed to establish good faith in attempting to resolve the dispute before voluntarily leaving his job.

■ Section 288.210, RSMo Cum. Supp.1998, governs appellate review of decisions of the Commission.[2] On appeal, we may modify, reverse, remand for rehearing, or set aside the decision of the Commission on the following grounds and no other:

(1) That the Commission acted without or in excess of its powers;

(2) That the decision was procured by fraud;

(3) That the facts found by the Commission do not support the award; or

(4) That there is no sufficient competent evidence in the record to warrant the making of the award.

Section 288.210; *Lauderdale v. Stivers Temporary Personnel, Inc.*, 11 S.W.3d 73, 76 (Mo.App. E.D.2000). The Commission's factual findings, if supported by competent and substantial evidence, in the absence of fraud, shall be conclusive and our review shall be confined to questions of law. Section 288.210; *Worley v. Division of Employment Sec.*, 978 S.W.2d 480, 482 (Mo. App. W.D.1998). The evidence and all reasonable inferences drawn therefrom is viewed in the light most favorable to the findings of the Commission. *Worley*, 978 S.W.2d at 482; *Lauderdale*, 11 S.W.3d at 76. We defer to the Commission on its assessment of credibility. *Worley*, 978 S.W.2d at 482. Our function, on appeal, is to determine whether the Commission, based upon the whole record, could have reasonably made its findings and reached its result. *Id.; Lauderdale*, 11 S.W.3d at 76.

■ A claimant is not eligible for unemployment benefits if he voluntarily quits his job without good cause attributable to the work or the employer. Section 288.050.1(1). Specifically, Section 288.050.1 provides:

Notwithstanding the other provisions of this law, a claimant shall be disqualified for waiting week credit or benefits until after the claimant has earned wages for work insured pursuant to the unemployment compensation laws of any state equal to ten times the claimant's weekly benefit amount if the deputy finds:

(1) That the claimant has left work voluntarily without good cause attributable to such work or to the claimant's employer;....

In applying for unemployment benefits, the burden is on the claimant to prove that he left employment for good cause attributable to his work or his employer. *Van-Drie v. Performance Contracting and Div. of Employment Sec.*, 992 S.W.2d 369, 373 (Mo.App. W.D.1999). Whether Employee's reason for leaving his employment

---

**1.** Article 2, Section 2 of the agreement between Employer and Local 160, Employee's union, provides, in pertinent part, that the union recognizes that Employer has the exclusive rights with regard to the management of the business and the direction of the working force, including determination of working schedules. Further, the supplement of rules and regulation, although not attached as part of the contract, provides that Employer can change employee work shifts at any time.

**2.** All further statutory references are RSMo Cum.Supp.1998 unless otherwise indicated.

constituted "good cause" is a legal issue on which we do not defer to the Commission's determination. *Id.*

"Good cause" is determined by the objective standard of what a reasonable person would do in the same or similar circumstances. *Id.* "Good cause" for voluntary unemployment is limited to instances where the unemployment is caused by external pressures so compelling that a reasonably prudent person would be justified in terminating employment. *Id.* Voluntary termination of employment must be in good faith, and thus, good faith is an essential element of good cause. *Clark v. Labor and Indus. Relations Com'n,* 875 S.W.2d 624, 627 (Mo.App.1994). To establish good faith, the employee must prove an effort was made to resolve the dispute before resorting to the drastic remedy of quitting his job. *Id.*

Employee, here, has failed to show good cause. Employee testified that he could not work the 8:00 a.m. to 5:00 p.m. shift because he had to pick up his child from daycare by 4:00 p.m. "A worker who leaves his employment under compulsion of marital or parental obligation has left his work voluntarily without good cause because his reasons for termination lack the causal connection with his employment which is required by the statute." *Lyell v. Labor and Indus. Relations Com'n Div. of Employment Sec.,* 553 S.W.2d 899, 901 (Mo.App.1977). This case is analogous to *Lyell.* In *Lyell,* an employee voluntarily left her employment of three years after she was unable to find a consistent baby-sitter. *Id.* at 900. The manager told the employee that they would try to work with her and gave her the name of a nursery, but the employee failed to report to work and indicated that she voluntarily quit. *Id.* The *Lyell* court held that the employee was disqualified from benefits because she had left her work voluntarily without good cause attributable to her work or to her employer finding that her parental obligation was not good cause attributable to her work or to her employer. *Id.* at 902.

Likewise in *Price v. Labor and Indus. Relations Com'n of Missouri,* 811 S.W.2d 457, 460 (Mo.App. W.D.1991), an employee voluntarily left her employment without good cause after a conflict between the employer's scheduling policy and a manager's inability to find daycare for her child during the evenings. The *Price* court found that by refusing to work the hours required of her position and refusing temporary alternative employment, the employee voluntarily left employment without good cause attributable to her work or to her employer. *Id.*

Employee has failed to show good cause attributable to his work or to his employer. Employee presented evidence that he voluntarily left his job due to parental obligation, which does not constitute good cause. We understand that *Lyell* and *Price* did not involve cases in which the employers change the shifts of the employees leading to the conflict as is the issue in this case. However, we find the logic of those cases applicable to Employee's situation here. Although we are sensitive to employees with child care obligations, we must follow the precedent recognizing that employers must have the power to manage their operations for the overall good of the business and its employees.

Further, Employee failed to show he made a good faith effort to resolve the problem before resorting to the drastic remedy of quitting his job. Employee testified he did not talk to any of the other scale operators about covering the last hour of his shift so that he could pick up his child from daycare as suggested by his supervisor. Further, Employee presented no evidence that he made a good faith effort to find another daycare provider.

For the forgoing reasons, we reverse the decision of the Commission.

MARY RHODES RUSSELL and RICHARD B. TEITELMAN, JJ., concur.