Osman OSMAN, Appellant,

v.

**DIVISION OF EMPLOYMENT SECURITY, Respondent.**

No. WD 72610.

Missouri Court of Appeals, Western District.

Feb. 1, 2011.

Samuel I. McHenry, Kansas City, MO, for Appellant.

Shelly A. Kintzel, Jefferson City, MO, for Respondent.

Before Division II: JAMES EDWARD WELSH, Presiding Judge, and MARK D. PFEIFFER and KAREN KING MITCHELL, Judges.

KAREN KING MITCHELL, Judge.

Osman Osman appeals from the decision of the Labor and Industrial Relations Commission ("the Commission") finding him disqualified from unemployment benefits. The Commission determined that Osman voluntarily quit his employment without having good cause attributable to either the work or the employer. We affirm.

**Factual and Procedural Background**

Osman was employed by Ace Personnel, Inc. ("Ace"), a temporary agency,[1] as a security guard. Broadway Medical was a client of Ace for which Ace assigned employees to provide security services. Osman had been stationed as a security guard in Broadway Medical's building for approximately six months, was working approximately thirty-five hours per week, and made $10.30 per hour. After several complaints about Osman's performance from staff and patients at Broadway Medical, Broadway Medical requested that Osman be removed from his post. On August 21, 2009, Osman reported to Broadway Medical, as usual. That day, he was told by an Ace staffer that it would be his last day at Broadway Medical and that he was to report to the Ace office the following Monday. On Monday, Osman was informed by Ace that another person was taking his place at Broadway Medical and that he would be assigned as a security guard for another of Ace's clients, a rental car company at the Kansas City airport. The new position paid $9.50 per hour, was for fewer hours per week, and Osman argued that it was farther from his home, although this conclusion is disputed. Osman rejected the new position.

Osman applied for unemployment benefits, and a deputy of the Division of Em-

---

1. Although the Commission made no finding below, it appears that Ace is a "temporary help firm" as that term is defined in section 288.030.1(27), and Osman is a "temporary employee" as that term is defined in section 288.030(26). For purposes of this opinion, we will refer to Ace as a "temporary agency."

ployment Security ("Division") determined that Osman had quit work voluntarily with good cause attributable to the work or the employer, thus qualifying Osman for benefits.

Ace appealed, not claiming that Osman was without good cause to quit his employment voluntarily, but on the basis that Osman had "received several warnings about his performance at the Broadway Medical post.... After several warnings and no improvement, Broadway Medical asked that [Osman] be removed from the post." The Division's Appeals Tribunal held a hearing on December 14, 2009. A representative of Ace testified that "on numerous occasions the property manager [of Broadway Medical] received complaints from the tenants of the building." Ace also submitted a written exhibit stating that several of Broadway Medical's complaints involved Osman's leaving his security post and talking on his cell phone. Evidence was also presented comparing the terms of the offered position with the terms of Osman's position at Broadway Medical, including hourly rate of pay, hours offered per week, and commute distance. The Appeals Tribunal reversed the deputy's determination that Osman was qualified for benefits, finding that Osman had quit work voluntarily without good cause attributable to his work or his employer, because a 7.8 percent reduction in pay is not sufficient to constitute good cause. The Appeals Tribunal did not address whether Osman's assignment at Broadway Medical was terminated due to misconduct.

Osman appealed to the Commission, which adopted the Appeals Tribunal's decision by a two-to-one vote, with one Commissioner dissenting on the basis that he believed that the combination of the reduction in pay rate and hours worked per week and the increased commuting distance was sufficient to show that Osman had good cause to quit his employment. Osman now appeals to this court.

## Standard of Review

We review appeals from the Commission under the narrow standard set forth in section 288.210.[2] Under this standard, we do not hear any new evidence but rather determine whether the Commission's findings of fact upon the record before us are supported by competent and substantial evidence. § 288.210. If so, the findings are deemed conclusive in the absence of fraud. *Id.* We may modify, reverse, remand for rehearing, or set aside the decision of the Commission only where: (1) the Commission acted without or in excess of its powers; (2) the decision was procured by fraud; (3) the facts found by the Commission do not support the decision; or (4) the decision was not supported by competent evidence in the record. *Id.*

" 'Decisions of the Commission which are clearly the interpretation or application of the law, as distinguished from a determination of facts, are not binding upon us and fall within our province of review and correction.' " *Ross v. Whelan Sec. Co.,* 195 S.W.3d 559, 563 (Mo.App. S.D.2006) (quoting *K & D Auto Body, Inc. v. Div. of Emp't Sec.,* 171 S.W.3d 100, 102 (Mo.App. W.D.2005)) (internal quotations omitted). When it is clear that the Commission's decision resulted from its application of the law, instead of its application of reason to the facts, we give no deference to the Commission's conclusions and use

**2.** All statutory references are to RSMo 2000, as updated through the 2009 cumulative supplement, unless otherwise noted.

our own independent judgment. *Id.* at 563–64.

## Discussion

The purpose of the unemployment compensation law is to "benefit ... persons unemployed through no fault of their own." § 288.020.1. Chapter 288 indicates a legislative intent to create an incentive for employed persons to remain employed by withholding benefits from those who quit their jobs without good cause or are discharged for misconduct. § 288.050. Sections 288.050.1 and .2 set out four circumstances under which an unemployed worker may be denied unemployment compensation.

An unemployed claimant under Chapter 288 may be denied benefits if the claimant: (1) "has left work voluntarily without good cause attributable to such work or to the claimant's employer" (section 288.050.1(1)); (2) "has retired" (section 288.050.1(2)); (3) "has been discharged for misconduct connected with the claimant's work" (section 288.050.2); or (4) has "failed without good cause ... to accept suitable work when offered the claimant ... by an employer by whom the individual was formerly employed" (section 288.050.1(3)).

█ In this case, first the deputy, and then the Appeals Tribunal, and finally the Commission, all found that Osman had quit his employment voluntarily. They only differed as to whether Osman's decision to quit was supported by good cause attributable to his work or to his employer so as to disqualify him from benefits under section 288.050.1(1).[3] Osman bears the burden of proving that his voluntary termination resulted from good cause attributable to his work or his employer. *Sokol v. Labor & Indus. Relations Comm'n of Mo.,* 946 S.W.2d 20, 23 (Mo.App. W.D.1997).

█ "'Good cause' has no fixed or precise meaning, and is judged by the facts of each case." *Partee v. Winco Mfg., Inc.,* 141 S.W.3d 34, 38 (Mo.App. E.D.2004) (citing *Cooper v. Hy–Vee, Inc.,* 31 S.W.3d 497, 502 (Mo.App. W.D.2000)). Good cause exists when there are circumstances that " 'would motivate the average able-bodied and qualified worker in a similar situation to terminate his or her employment.' " *Hessler v. Labor & Indus. Relations Comm'n,* 851 S.W.2d 516, 518 (Mo. banc 1993) (quoting *Belle State Bank v. Indus. Comm'n of Mo.,* 547 S.W.2d 841, 846 (Mo.App.1977)). The employee must demonstrate positive conduct that is " 'consistent with genuine desire to work and be self-supporting.' " *Id.* (quoting *Belle State Bank,* 547 S.W.2d at 846). Circumstances that are sufficient to show that an employee voluntarily terminated employment for good cause must be real, substantial and reasonable, " 'and good faith is an essential

---

**3.** In appealing the deputy's initial award of benefits, Ace made allegations regarding Osman's performance at Broadway Medical that could be construed as a claim that Osman's assignment at Broadway Medical was terminated due to misconduct. However, none of the parties to this appeal claim that Osman was discharged from his employment. Rather, they appear to agree that Osman quit his employment voluntarily and therefore argue only about whether the voluntary quit was for good cause attributable to the job or the employer. In addition, Chapter 288 makes it clear that a temporary employee of a tempo-rary help firm is an employee of that firm and not of the firm's clients to whom the employee is assigned to work. *See* § 288.030.1(27). In this case, Ace's attempt to maintain the employee-employer relationship with Osman, even after complaints about his performance while assigned at Broadway Medical, does not evidence that Osman was discharged from his employment with Ace. Therefore, we will not address the issue of whether Osman was discharged for misconduct but will accept the parties' characterization that Osman quit voluntarily.

element.'" *Id.* (quoting *Belle State Bank,* 547 S.W.2d at 846). Thus, "[g]ood cause is determined by the objective standard of what a *reasonable person* would do *in the same or similar circumstances.*" *Bordon v. Div. of Emp't Sec.,* 199 S.W.3d 206, 210 (Mo.App. W.D.2006) (quoting *Lashea v. Fin–Clair Corp.,* 30 S.W.3d 237, 241 (Mo. App. E.D.2000)) (emphasis added, internal quotation marks omitted).

■ The appropriate question is whether Osman, as a temporary employee, acted reasonably in rejecting the offer of a new temporary assignment. The Commission concluded that Osman did not meet his burden of demonstrating that a reasonable employee would have rejected the new assignment because the new assignment was *comparable* to Osman's previous assignment. Similarly, the Division argues on appeal that because there was *no substantial change* in the terms or conditions of his employment, Osman did not act reasonably in rejecting the offer of a different temporary work assignment. Both parties cite cases that address reasonableness in the context of a change in the terms or conditions of employment for a permanent employee. However, what is reasonable for a temporary employee is not necessarily the same as what is reasonable conduct for a permanent employee.

We agree that Osman did not meet his burden to demonstrate that he acted reasonably in rejecting the offered assignment, but we do not believe that the Commission applied the proper standard in reaching its decision. As noted above, in deciding whether an employee acts with good cause, the Commission should apply an objective standard of what a reasonable person would do in the same or similar circumstances. In this case a relevant circumstance that must be considered is that Osman was employed by a temporary employment agency.

Osman was a "temporary employee" of a "temporary help firm," which by definition means that Osman was to be assigned to work for clients of the firm "to support or supplement the clients' workforce in work situations such as employee absences, temporary skill shortages, seasonal workloads, and special assignments and projects." § 288.030.1(27). While such an assignment might be indefinite and could conceivably last for years, that will not always be the case. A reasonable employee accepting a position as a temporary employee of a temporary help firm should be aware that his assignment may change and that when it does, the location of the job, rate of pay, and hours may also change. This does not mean that a temporary employee is obligated to accept any position that is offered, regardless of terms or conditions, or be subject to the denial of unemployment security benefits. There can be situations where the nature of the temporary assignment offered is such that it will provide the employee with good cause to voluntarily leave his or her employment. However, an employee cannot meet his burden of showing good cause attributable to his employment simply by showing that the temporary assignment offered was not *comparable to* or *substantially similar* to the employee's most recent temporary assignment.

Both the position at Broadway Medical and the rejected position involved performing services as a security guard. And while the rate of pay and the available hours associated with the rejected position were both less than he had enjoyed at his previous assignment, Osman did not establish that either aspect of the offered assignment was outside the range of what a reasonable temporary employee should expect to encounter on such an assignment. Nor did he establish that the commute to the offered assignment was so burdensome

as to make accepting the position unreasonable. While the terms of the offered assignment were less attractive than those of Osman's previous assignment, we hold that they were such that a reasonable temporary employee would have accepted the offered position until something more desirable became available.

Although the Commission appears to have applied a less onerous standard than that which Osman was required to prove to meet his burden of showing that his voluntary termination resulted from good cause attributable to his work or his employer, because the decision to deny unemployment security benefits was supported by competent evidence on the record, we affirm the Commission's decision.

JAMES EDWARD WELSH, Presiding Judge, and MARK D. PFEIFFER, Judge, concur.