

# In the Missouri Court of Appeals
# Eastern District

## DIVISION THREE

| | | |
|---|---|---|
| MARTIN MCCABE, | ) | No. ED110169 |
| | ) | |
| Appellant, | ) | Appeal from the Labor and |
| | ) | Industrial Relations Commission |
| v. | ) | |
| | ) | |
| ADP TOTAL SOURCE FL XVIII, INC. | ) | Filed: September 27, 2022 |
| and DIVISION OF EMPLOYMENT | ) | |
| SECURITY, | ) | |
| | ) | |
| Respondents. | ) | |

## Introduction

Appellant Martin McCabe ("McCabe"), acting *pro se*, appeals the decision of the Labor and Industrial Relations Commission disqualifying him from unemployment benefits. McCabe argues the Commission erred in that he had good cause to leave his job with ADP Total Source FL XVIII, Inc. ("ADP Total Source"), and he left for a more remunerative job. We affirm the decision of the Commission.

## Background

McCabe filed for unemployment benefits on April 21, 2020. A deputy for the Division of Employment Security determined that McCabe was disqualified from receiving benefits because

he voluntarily resigned from ADP Total Source without good cause attributable to his work or his employer under Section 288.050.[1]

McCabe appealed the deputy's determination to the Appeals Tribunal. On February 18, 2021, the Appeals Tribunal heard McCabe's appeal by telephone conference, at which McCabe testified.

McCabe testified that he began working for ADP Total Source on January 7, 2019. He worked in the Hopewell division as a community service specialist offering mental health services. As of January 3, 2020, McCabe voluntarily resigned from his position with ADP Total Source. McCabe testified that, before he voluntarily resigned, he had been working part-time with Uber and Lyft. He testified that his primary reason for resigning was that he "just chose personally to start working full time for Uber and Lyft as a private contractor." McCabe referred to his position with Uber and Lyft as "private contractor work."

McCabe testified that a secondary reason for his resignation was an ongoing conflict with his direct supervisor regarding the time at which McCabe was required to arrive at work each morning. Company policy required each employee to work five billable hours every day but allowed for a flex schedule in which employees could determine the hours they would work between 8 A.M. and 5 P.M. According to McCabe, his supervisor started requiring him to arrive by 9 A.M. or earlier, contrary to company policy. McCabe was unable to meet this requirement due to his need to deliver his son to school at 9 A.M.

Finally, McCabe also cited his inability to complete requirements for his master's degree program due to work as another factor in his decision to voluntarily resign.

---

[1] All statutory references are to the Revised Statutes of Missouri (2016), as supplemented, unless otherwise indicated.

The Appeals Tribunal made findings of fact and conclusions of law and affirmed the deputy's decision that McCabe was disqualified from receiving unemployment benefits. The Appeals Tribunal found that McCabe voluntarily left work at ADP Total Source. It concluded that McCabe's desire to deal with his childcare responsibilities and educational pursuits during work hours did not provide him with good cause to voluntarily leave.

Consistent with McCabe's testimony, the Appeals Tribunal also found:

> Before claimant left his employment with the employer[,] he was working for Uber and Lyft on a part-time basis. Claimant voluntarily resigned so he could work fulltime with the other companies. The claimant performed services for Uber and Lyft as an independent contractor.

Based on those findings of fact, the Appeals Tribunal concluded that McCabe quit, first and foremost, because he wanted to work as an independent contractor for Uber and Lyft full-time. McCabe did not quit his job to take a more remunerative job, and his Uber and Lyft endeavors were continuations of self-employment and not jobs.

On September 2, 2021, McCabe sought review by the Labor and Industrial Relations Commission. A two-member majority of the Commission found the decision of the Appeals Tribunal was supported by competent and substantial evidence. The Commission adopted the findings of fact and conclusions of law of the Appeals Tribunal and affirmed its decision.

McCabe now appeals to this Court.

### Standard of Review

Appellate review of the Commission's decision in an unemployment case is governed by Section 288.210, which reads in pertinent part:

> The findings of the commission as to the facts, if supported by competent and substantial evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the appellate court shall be confined to questions of law. The court, on appeal, may modify, reverse, remand for rehearing, or set aside the decision of the commission on the following grounds and no other:
>      (1) That the commission acted without or in excess of its powers;

3

(2) That the decision was procured by fraud;
(3) That the facts found by the commission do not support the award; or
(4) That there was no sufficient competent evidence in the record to warrant the making of the award.

This means that, in the absence of fraud, the Commission's factual findings are conclusive and binding if supported by competent and substantial evidence. *Burns v. Lab. & Indus. Rels Comm'n,* 845 S.W.2d 553, 554–555 (Mo. banc 1993); *Lashea v. Fin-Clair Corp.*, 30 S.W.3d 237, 240 (Mo. App. E.D. 2000). "We will affirm the Commission's decision if we find, upon a review of the whole record, that there is sufficient competent and substantial evidence to support the Commission's decision." *Smith v. Greyhound Bus Co.*, 477 S.W.3d 55, 59 (Mo. App. E.D. 2015).

The Court is not bound by the Commission's conclusions of law or its application of law to the facts. *Kimble v. Div. of Emp. Sec.*, 388 S.W.3d 634, 638 (Mo. App. W.D. 2013). We review questions of law *de novo. Difatta-Wheaton v. Dolphin Capital Corp.*, 271 S.W.3d 594, 596 (Mo. banc 2008).

**Discussion**

McCabe presents two points on appeal. In his first point, McCabe argues the Commission erred in finding that he left work without good cause attributable to the work or his employer. McCabe cites his legal obligations to deliver his son to school on time, in conjunction with what he characterizes as unreasonable demands by his supervisor, as good cause to quit under Section 288.050.1. In his second point, McCabe contends the Commission erred by failing to recognize his planned full-time work with Uber and Lyft as a more remunerative job than his position with ADP Total Source under Section 288.050.1(1)(a). We address McCabe's points *seriatim*.

*Point I: Good Cause*

The primary purpose of the Missouri Employment Security Law is to provide benefits to persons "unemployed through no fault of their own." RSMo § 288.020.1; *Difatta-Wheaton*, 271 S.W.3d at 596. Section 288.050.1 disqualifies a claimant from receiving certain unemployment benefits if the claimant left work voluntarily and without good cause attributable to such work or his employer. *Smith*, 477 S.W.3d at 60. "An employee is deemed to have left work voluntarily when he leaves of his own accord, as opposed to being discharged, dismissed, or subjected to layoff." *Darr v. Roberts Mktg. Grp., LLC*, 428 S.W.3d 717, 724 (Mo. App. E.D. 2014).

If a claimant is deemed to have left voluntarily, then the question becomes whether the claimant had good cause attributable to his work or employer. *Id.* The burden is on the claimant to show good cause for leaving his employment. *Id*. Whether a claimant's reason for resigning constitutes good cause is a question of law that is reviewed *de novo*. *Smith*, 477 S.W.3d at 60.

Here, McCabe repeatedly testified that he voluntarily resigned, and that fact is undisputed on appeal. The Commission's finding of fact that McCabe voluntarily resigned is supported by competent and substantial evidence and is conclusive on appeal. *See Turner v. Proffer Transp., Inc.*, 310 S.W.3d 769, 774 (Mo. App. E.D. 2010). Accordingly, our analysis shifts to the legal issue of whether McCabe had good cause attributable to his work or employer to voluntarily leave under Section 288.050.1.

Missouri courts have long interpreted "good cause" as circumstances that would cause an average, able-bodied, qualified, and reasonable person in a similar situation to leave the employment rather than continue working. *Darr*, 428 S.W.3d at 724*; Hessler v. Lab. & Indus. Rels Comm'n,* 851 S.W.2d 516, 518 (Mo. banc 1993); *Belle State Bank v. Indus. Comm'n Div. of Emp. Sec.,* 547 S.W.2d 841, 846 (Mo. App. 1977). This is an objective standard asking what a

reasonable, average person would do in the same or similar circumstances. *Partee v. Winco Mfg., Inc.*, 141 S.W.3d 34, 38 (Mo. App. E.D. 2004).

"Conditions that motivate the employee to voluntarily leave must be real, not imaginary, substantial, not trifling, and reasonable, not whimsical, and good faith is an essential element." *Cooper v. Hy-Vee, Inc.,* 31 S.W.3d 497, 503 (Mo. App. W.D. 2000). Good cause is limited to circumstances in which external pressures attributable to the work or the employer are so compelling that a reasonable person would be justified in terminating employment. *Smith*, 477 S.W.3d at 60.

Missouri precedent consistently holds that parental obligations during working hours do not constitute good cause attributable to the work or the employer under Section 288.050.1. *Lashea,* 30 S.W.3d at 241; *Price v. Lab. & Indus. Rels. Comm'n of Missouri*, 811 S.W.2d 457, 460 (Mo. App. W.D. 1991); *Rothschild v. Lab. & Indus. Rels. Comm'n,* 728 S.W.2d 720 (Mo. App. E.D. 1987); *Lyell v. Lab, & Indus. Rels. Comm'n Div. of Emp. Sec.,* 553 S.W.2d 899, 902 (Mo. App. 1977). "A worker who leaves his employment under compulsion of marital or parental obligation has left his work voluntarily without good cause because his reasons for termination lack the causal connection with his employment which is required by the statute." *Lashea,* 30 S.W.3d at 241 (*quoting Lyell,* 553 S.W.2d at 901).

In *Lyell*, the claimant left her job voluntarily after being unable to obtain a consistent babysitter during her required shift times. 553 S.W.2d at 900. The *Lyell* court held that parental obligations did not constitute good cause attributable to the claimant's work or employer, and the claimant was disqualified from receiving benefits. *Id.* at 902. Similarly, in *Lashea*, the claimant voluntarily resigned after the company altered set shift times, which interfered with the claimant's pickup time of his child from childcare. 30 S.W.3d at 239. The *Lashea* court held that

the conflict between the claimant's scheduled working hours and his need to pick up his child from arranged childcare did not constitute good cause attributable to his work or employer. *Id.* at 241.

Here, McCabe likewise argues that his legal duty to deliver his son to school constitutes good cause for his voluntary resignation. While we are sympathetic to McCabe's duties as a father, it is well settled that those duties "lack the causal connection with his employment which is required by the statute." *Lashea,* 30 S.W.3d at 241; *Lyell,* 553 S.W.2d at 901.

We observe also that McCabe repeatedly testified that his primary motivation for resigning was not his parental duties, but to work full-time with Uber and Lyft. McCabe also testified that he quit because his work inhibited his educational requirements. Thus, not even McCabe contends that the conflict between his parental duties and his work hours amounts, alone or even primarily, to good cause, that is, pressure so compelling that a reasonable person would be justified in terminating employment. *See Smith*, 477 S.W.3d at 60. McCabe has failed in his burden to show that he had good cause attributable to his work or employer to voluntarily resign from his position at ADP Total Source.

We conclude, as did the Commission, that McCabe left work voluntarily without good cause attributable to such work or to his employer and therefore is disqualified from unemployment benefits under Section 288.050.1. Point I is denied.

*Point II: More Remunerative Job*

In his second point, McCabe argues the Commission erred when it failed to recognize his intent to pursue full-time work with Uber and Lyft as a more remunerative job under Section 288.050.1(1)(a). Whether or not driving with Uber and Lyft is more remunerative, it is not a "job" under the statute.

Notwithstanding the disqualification under Section 288.050.1 for leaving work without good cause, Section 288.050.1(1)(a) provides that a claimant is not disqualified if he quit work for the purpose of accepting a more remunerative job, accepted that job, and earned wages from that job. *See Landis v. Div. of Emp. Sec.*, 959 S.W.2d 474, 475 (Mo. App. S.D. 1997); *Missouri Div. of Emp. Sec. v. Lab. & Indus. Rels. Comm'n of Missouri*, 739 S.W.2d 747, 749 (Mo. App. W.D. 1987).

McCabe testified and maintains in his appellate brief that he voluntarily resigned to work full-time with Uber and Lyft as an independent or "private" contractor. The Commission found as much, those findings are supported by competent and substantial evidence, and they are conclusive on appeal. *See Smith*, 477 S.W.3d at 59; *Turner*, 310 S.W.3d at 774. The Commission thus concluded that McCabe's primary reason for quitting his job was to work as an independent contractor for Uber and Lyft full-time. He did not quit for a more remunerative job, and his endeavors at Uber and Lyft were not a job.

Section 288.034, defining "employment" in this context, states, "Service performed by an individual for remuneration shall be deemed to be employment subject to this law unless it is shown to the satisfaction of the division that such services were performed by an independent contractor." RSMo § 288.034.5. Pursuant to Section 387.414, drivers for transportation network companies, such as Uber and Lyft, generally are independent contractors and not employees. Likewise, pursuant to Section 387.432, transportation network companies are not considered employers for the purpose of unemployment benefits under Chapter 288.

The conclusive fact here is that McCabe performed services for Uber and Lyft as an independent contractor and not as an employee. Accordingly, McCabe's resignation to pursue full-time work with Uber and Lyft was not for the purpose of accepting a job, more remunerative

or otherwise, as required under Section 288.050.1(1)(a); it was to engage full-time as an independent contractor. Therefore, McCabe is disqualified from unemployment benefits under Section 288.050.1(1)(a). Point II is denied.

## Conclusion

For these reasons, we affirm the Commission's decision that McCabe was disqualified from receiving unemployment benefits.

_____
Cristian M. Stevens, J.

Gary M. Gaertner, Jr., P.J., and
John P. Torbitzky, J., concur.