#26634-a-JKK

**2013 S.D. 69**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

ERIN EILER,                                                    Claimant and Appellant,

    v.

SOUTH DAKOTA DEPARTMENT
OF LABOR AND REGULATION,
UNEMPLOYMENT INSURANCE
DIVISION,                                                      Agency and Appellee.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE WILLIAM J. SRSTKA, JR.
Retired Judge

\* \* \* \*

ERIN EILER
Huron, South Dakota                          Pro se claimant and appellant.


AMBER L. MULDER of
South Dakota Department
  of Labor and Regulation
Pierre, South Dakota                          Attorneys for agency and
                                         appellee.

\* \* \* \*

CONSIDERED ON BRIEFS
ON AUGUST 27, 2013

OPINION FILED   **09/18/13**

#26634

KONENKAMP, Justice

[¶1.]      We review a dismissal of an unemployment insurance appeal and a motion to refund filing and copying fees the claimant paid to pursue this appeal.

## Background

[¶2.]      On January 27, 2012, the South Dakota Department of Labor and Regulation, Unemployment Insurance Division informed Erin Eiler of her disqualification from unemployment insurance benefits.  The disqualification was based on her alleged failure, without good cause, to accept work she was capable of performing.  According to the notice, Eiler's reason for refusing employment with Spherion — a temporary staffing agency where she was most recently employed — was that she was moving.  In response to the notice, Eiler sent a letter to the Department.  In it, she expressed her intention to appeal the decision, offered proof that she had not received the notice until February 15, two days after the fifteen-day deadline to appeal, and argued that she did not refuse work she could perform.[1]

[¶3.]      A telephonic hearing on Eiler's appeal was scheduled for March 13, 2012, at 3:30 p.m. central time.  The purpose of the hearing was to determine whether Eiler's letter filed February 17, 2012, was a timely appeal.  Eiler received timely written notice of the hearing, which warned that her failure to appear could result in the dismissal of her appeal.  On March 13, she did not call in to the hearing at the appointed time, instead telephoning the conference operator forty

---

1.      That proof — envelopes mailed by the Department with "02/09/13" stamped on the forwarded address sticker — appears inconclusive.  Eiler does not refute that her late receipt of the notice was because she failed to give the Department her updated address.

minutes later. Eiler sent a fax to the ALJ later that day requesting that the hearing be rescheduled or her claim reopened. She also telephoned the Department and, according to the receptionist's notes, explained that her failure to timely appear at the telephonic hearing was the result of her clock being too slow. The ALJ entered an order of dismissal on March 14, 2012, and, the next day, an order denying Eiler's request to reopen for failure to show good cause. Eiler requested a review of her claim by the Secretary. The Secretary affirmed the dismissal of Eiler's motion for failure to attend the hearing and denied her request to reopen.

[¶4.] Eiler initiated her appeal in circuit court. In the filing form Eiler submitted to the clerk on April 20, 2012, she marked the boxes for "Administrative Appeal" and "Other" under the civil filing section, as well as the "Small Claims" option. She described her claim as "[u]nemployment benefits of $1,906 withheld." She wrote that because the disqualification notice "was not received by short deadlines," she was "not fully at fault" for her own timeliness issues. After her claim was initially filed in small claims court, the matter was transferred to the civil docket in May 2012. The circuit court affirmed the Department's decision on January 22, 2013, concluding that the Department did not err in its decision to deny reopening Eiler's claim. It found that a failure to keep an accurate clock was insufficient for Eiler to meet her burden to show good cause to reopen the case.

### 1. Dismissal of Appeal for Failure to Appear

[¶5.] Eiler contends that her due process rights were violated by the Department's denial of benefits based on her failure to call in to the hearing at the

correct time.[2] The Department and the circuit court relied on ARSD 47:06:05:03.01 as grounds for dismissing Eiler's case. The interpretation of an administrative rule is a question of law subject to de novo review. *Westmed Rehab, Inc. v. Dep't of Soc. Servs.*, 2004 S.D. 104, ¶ 5, 687 N.W.2d 516, 518. ARSD 47:06:05:03.01 provides:

> If a party fails to appear at the date and time a hearing is scheduled, the party must file a written request to reopen the hearing to take the party's testimony and other evidence within ten days after the order dismissing the appeal or the decision. In the request, the party must explain why the party failed to appear for the hearing. The department may grant the request if good cause is shown.

[¶6.] By the rule's plain meaning, if a party misses a hearing, the effect is a dismissal of the appeal, which may then be overturned by the ALJ if the defaulting party offers a written request to reopen that gives good cause for doing so. We must give this rule its plain meaning and effect, which is to permit dismissal of an appeal for failure to appear and a subsequent failure to show good cause. *Holscher v. Valley Queen Cheese Factory*, 2006 S.D. 35, ¶ 35, 713 N.W.2d 555, 565. While this outcome may seem harsh, other states explicitly adopt this result in similar procedures. *See, e.g.*, 7 Colo. Code Regs. § 1101-2:11.2.13.1; Fla. Admin. Code r. 73B-20.017(2); La. Admin. Code tit. 40, pt. IV, § 113(3)(B); Minn. R. 7315.1600; Nev.

---

2.    The ALJ's sole basis for dismissing Eiler's appeal was that Eiler failed to appear at the hearing to determine whether her initial appeal was late. She was then unable to show good cause for her failure to appear in order to reopen the defaulted appeal. Her second claim regarding a lack of a legal and factual basis for the determination notice — her failure to find work — is not at issue in this appeal since it is not the basis for the dismissal. Eiler also never specifically asserted that she did not timely receive the notice of the hearing. Therefore, Eiler's third claim that the Department was at fault for not mailing correspondence to her sooner is irrelevant.

Admin. Code § 481.300(1); N.J. Admin. Code § 1:12-14.4(a). Eiler's appeal was properly dismissed.

[¶7.] Whether Eiler's excuse for missing her hearing — her inaccurate clock — constituted good cause for reopening her dismissed appeal remained largely in the discretion of the ALJ. *See* ARSD 47:06:05:03.01 ("department *may* grant the request"). "Good cause" must be viewed in the context of the administrative rule and applied to the circumstances of the case. The term is generally defined as "a substantial reason amounting in law to a legal excuse for failing to perform an act required by law." *Black's Law Dictionary* 692 (6th ed. 1990) (citation omitted). Although we may have made a different decision, we find no abuse of discretion in the ALJ's ruling that Eiler's mistake or negligence in relying on her inaccurate clock was not good cause for reopening her appeal.

[¶8.] As for her due process claim, Eiler's marginal status makes her interest in the receipt of unemployment benefits high. *See Mathews v. Eldridge*, 424 U.S. 319, 340, 96 S. Ct. 893, 905, 47 L. Ed. 2d 18 (1976). But the touchstone of a due process challenge in this narrow, failure-to-appear context is the sufficiency of the notice to appear. *See, e.g.*, *Patricia D. v. Ariz. Dep't of Econ. Sec.*, No. 2 CA-JV 2008-0068, 2008 WL 4517923, at *2 (Ariz. Ct. App. Oct. 8, 2008); *Graves v. Dep't of Emp't Sec.*, 182 P.3d 1004, 1008 n.11 (Wash. Ct. App. 2008). "The essence of due process is the requirement that 'a person in jeopardy of serious loss (be given) notice of the case against him and opportunity to meet it.'" *Mathews*, 424 U.S. at 348, 96 S. Ct. at 909 (quotation omitted). "The notice must be of such nature as reasonably to convey the required information . . . and it must afford a reasonable time for

those interested to make their appearance." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S. Ct. 652, 657, 94 L. Ed. 865 (1950). Eiler's hearing notice gave the "required information" — the purpose and scope of the hearing and the phone number, date, and time to call in. It also notified her that if she did not appear "at the scheduled time of the hearing, the matter may be dismissed or it may be decided on the basis of evidence presented by the other party at the hearing." Eiler did not provide evidence of untimely receipt of this notice to carry her burden to show good cause. In short, Eiler received timely and comprehensive notice of a properly-executed regulatory proceeding. Accordingly, Eiler received sufficient due process, and therefore, her constitutional argument is unavailing.

## 2. Court Fees in an Unemployment Insurance Appeal

[¶9.]      Eiler's remaining issue is her motion to this Court seeking recompense for the filing and copying fees charged by the Minnehaha County Clerk of Courts. She contends that these charges violated the prohibition in SDCL 61-7-21 against assessing fees to claimants pursuing an unemployment insurance benefits appeal.

[¶10.]      The record indicates that Eiler was charged $40.20 to file the matter in small claims court. The other $161.80 in fees was charged by the Minnehaha County Clerk of Courts when Eiler's small claims matter was converted to a civil appeal (#12-1826). The charge included a $50 filing fee for the preparation of the record for appeal (with $11.80 in copying costs, amounting to $61.80 total), per SDCL 16-2-29(2), and a $100 filing fee, labeled a bond, but in actuality the $100 comprised $50 for a Supreme Court filing fee, per SDCL 16-2-29.1(1), and a $50

Court automation fee, per SDCL 16-2-41.1.[3]  For this proceeding, then, Eiler was charged $190.20 in filing fees and $202 in total fees.

[¶11.]        SDCL 61-7-21 provides in relevant part that "[n]o individual claiming benefits may be charged fees of any kind in any proceeding under this title by the department or by any court."  Lacking any case law interpreting SDCL 61-7-21, we "adhere to two primary rules of statutory construction.  The first rule is that the language expressed in the statute is the paramount consideration.  The second rule is that if the words and phrases in the statute have plain meaning and effect, we should simply declare their meaning and not resort to statutory construction." *Goetz v. State*, 2001 S.D. 138, ¶ 15, 636 N.W.2d 675, 681.  This language prohibiting "fees of any kind" assessed "by any court" has a broad scope and surely includes the $190.20 in filing fees Eiler seeks to have returned.

[¶12.]        As stated in SDCL 61-7-21, "proceeding[s] under this title" include appeals at the Department level, SDCL ch. 61-7, as well as appeals of the Department's final decision to the circuit court and the Supreme Court, SDCL 61-7-14 (incorporating SDCL 1-26-30.2 and SDCL 1-26-37).  Court rules and statutes consistently define as fees the payment charged to a party for court activities performed on their behalf.  *See* SDCL ch. 16-2.  It follows, then, that SDCL 61-7-21

---

3.    The receipt states in the description of payment: "Undertaking for Supreme Court Appeal $500," for which Eiler paid $100.  It appears this description was a coding error.  SDCL 15-26A-23 requires the filing of a bond for costs on appeal of no less than five hundred dollars before the expiration of the time for filing a notice of appeal.  Such security is not "required of an appellant who is not subject to costs." *Id*.  The $100 was clearly insufficient for the purpose of the bond, but corresponds exactly to the amount of filing fees for an appeal to this Court that are otherwise unaccounted for in the record.

prohibits any fees charged for any court service at any stage of an appeal of Title 61 unemployment benefits decisions in the Unified Judicial System. Thus, each of the filing fees charged to Eiler — $40.20 small claims filing fee, the $150 paid for three separate $50 "fees" for appealing this matter to the Supreme Court as well as $11.80 in copying fees — violate SDCL 61-7-21.

[¶13.] The weight of case law in other states regards filing fee unemployment benefit statutes akin to SDCL 61-7-21 as statutes of prohibition. A minority of states that have decided this issue adopt a distinction between "court costs" and "fees" such that filing fees would not fall under their prohibitions.[4] A majority of states, however, find that regardless of the classification of a filing cost, "court costs" and fees fall under the prohibition.[5] Arizona stakes a middle ground, placing taxable costs and bonds outside the prohibition, while placing filing fees within the prohibition.[6] Taken together, the balance of persuasive authority reinforces the plain meaning of SDCL 61-7-21 that filing fees cannot be charged to someone seeking unemployment benefits with the Department or appealing the Department's decision within the Unified Judicial System. Eiler was therefore improperly charged $190.20 by the Minnehaha County Clerk of Courts.

---

4. *See Barnes v. Emp't Sec. Bd. of Review*, 504 P.2d 591, 604-05 (Kan. 1972); *Miss. Emp't Sec. Comm'n v. Wilks*, 171 So. 2d 157, 159-60 (Miss. 1965).

5. *See Geiken v. Lutheran Home for the Aged Ass'n*, 468 N.W.2d 223, 227 (Iowa 1991); *Smith v. Adams*, 370 A.2d 288, 289 (N.H. 1977) (per curiam); *Sweeney v. Bd. of Review*, 206 A.2d 345, 349-50 (N.J. 1965); *Washington v. Sumrall*, 457 So. 2d 50, *reh'g granted*, 457 So. 2d at 53 (La. Ct. App. 1984) (per curiam); *Schomaker v. Labor & Indus. Relations Comm'n*, 675 S.W.2d 450, 453 (Mo. Ct. App. 1984).

6. *See Barry v. Ariz. Dep't of Econ. Sec.*, 542 P.2d 1138, 1139-40 (Ariz. Ct. App. 1975).

[¶14.] A question remains whether copying fees are unmistakably prohibited under SDCL 61-7-21. The utility of a plain meaning interpretation ends, and the need to look at the history of the legislation begins, when interpretation becomes absurd or unreasonable. *In re Estate of Howe*, 2004 S.D. 118, ¶ 41, 689 N.W.2d 22, 32. On its face, it appears absurd to place the cost burden of copying — at the whim of claimants — on the Department or the courts. Yet the limited legislative intent and history of SDCL 61-7-21 appears to support prohibiting fees for copies. The substance of the statute was adopted in special session in December 1936 to comply with the enactment of the federal Social Security Act of 1935. *See* 1936 S.D. Sess. Laws 4. The prohibition was articulated in a section entitled "Protection of Rights and Benefits." *Id.* at 21. The other provisions in that section — a prohibition against waiver or assignment of these rights — describe the right being protected as a "right to [unemployment] benefits." *Id.* The prohibition on charging "fees of any kind," because of this right to benefits, was "meant to assist claimants in the prosecution of their claims" given the limited amount of benefits involved or to indicate that the public should bear these costs because "proper enforcement of the basic plan concerns the public as well as the individual claimant." *See Sweeney*, 206 A.2d at 350. Indeed, "[i]t is the general rule that since the purpose of unemployment compensation benefits is to relieve the stress of economic insecurity due to unemployment, the unemployment compensations statutes should be liberally construed in favor of the claimant to afford all the relief the Legislature intended to grant." *Red Bird v. Meierhenry*, 314 N.W.2d 95, 96 (S.D. 1982).

[¶15.] Viewed in this light, in adopting SDCL 61-7-21, "the Legislature used very broad language, prohibiting the charging of 'fees *of any kind*,' and did not distinguish between fees charged for services the [courts are] required to perform, and those [they perform] voluntarily." *See Gretz v. Fla. Unemployment Appeals Comm'n*, 572 So. 2d 1384, 1386 (Fla. 1991) (interpreting Fla. Stat. § 443.041(2)(a)). Thus, even though the scope of copying privileges may be curtailed by the courts or the Department, once a claimant is charged by them for any service connected to the claimant's Title 61 appeal, "it is irrelevant whether there is any statutory or other requirement" that a service be provided, the charge is invalid and runs afoul of SDCL 61-7-21. *See id.*

[¶16.] This analysis does not prohibit common-sense restrictions on copying privileges, nor does it require the courts or the Department to provide services to claimants beyond what is statutorily required. For instance, a "copy" necessary for an appeal is a copy of the transcript. *See* SDCL 1-26-32.2. While this cost is normally borne by the party appealing, SDCL 1-26-32.3, a Title 61 claimant should not be charged for the transcript if the transcript is necessary, such as when the claimant appeals an adverse decision. As one court explained, "[w]e note the agency's concern that claimants might burden it with routine demands for transcripts. The agency . . . may require that a demand for a transcript be related to an actual appeal to the judiciary; the Legislature did not intend that every claimant may have a souvenir of his administrative experience." *See Sweeney*, 206 A.2d at 349-50.

[¶17.]     Considering the comprehensive prohibition on fees under Title 61, clerks of court must be vigilant when providing services to these claimants. Not only must clerks take precautions to ensure that no fees are charged to claimants in their unemployment insurance benefit cases, but clerks must also protect limited court resources by only providing copying services, on request, to claimants for copying necessary to pursue their Title 61 claim. The scope of this necessary copying would include a single copy of a transcript of the various Title 61 hearings for claimants appealing decisions from those hearings, and may also include copies to permit service on the Department of original documents required at any stage of the proceeding in court, *see* SDCL 15-6-5(d), copies of briefs to be filed with the Court and served on the Department, SDCL 15-26A-79, and copies of motions to be filed in Court and served on the Department, SDCL 15-26A-87.2. Beyond these requirements, and any other copying requirements explicitly provided by law, it is not likely that the ability to copy will make the difference in introducing all dispositive evidence or bringing a claim on appeal, therefore making it *necessary* for the court or the Department to provide the service. *Cf.* SDCL 15-17-37; *DeHaven v. Hall*, 2008 S.D. 57, ¶ 52, 753 N.W.2d 429, 445 (regarding necessary costs accrued in civil cases generally).

[¶18.]     In this case, however, Eiler should be reimbursed for the $11.80 cost of copies made on February 28, 2013, as well as for the filing fees. The broad language of SDCL 61-7-21 requires this remedy. *See Gretz*, 572 So. 2d at 1386. In granting this motion, therefore, we conclude that Eiler should receive reimbursement of $202.

[¶19.] We affirm dismissal and grant the motion to refund the filing fees and copying costs.

[¶20.] GILBERTSON, Chief Justice, and ZINTER, SEVERSON, and WILBUR, Justices, concur.