

# In the Missouri Court of Appeals
# Eastern District

DIVISION ONE

| | | |
|---|---|---|
| ERICA WILLIAMS, | ) | No. ED101280 |
| | ) | |
| Appellant, | ) | Appeal from the Labor and |
| | ) | Industrial Relations Commission |
| vs. | ) | |
| | ) | |
| FAVORED, LLC and | ) | |
| DIVISION OF | ) | |
| EMPLOYMENT SECURITY, | ) | |
| | ) | FILED: September 30, 2014 |
| Respondents. | ) | |

## OPINION

Erica Williams appeals the decision of the Labor and Industrial Relations Commission denying her claim for unemployment compensation. We reverse and remand for entry of an award of benefits.

## Background

Ms. Williams was a certified early childhood teacher at the Good Shepherd Infant & Toddler Center, operated by Favored, LLC (Employer), from October 2012 until her resignation in May 2013. Williams resigned because Employer was violating state regulations regarding child-to-staff ratios and dismissed her concerns to that effect. Williams filed a claim for unemployment benefits through the Division of Employment Security. A deputy for the Division determined that she was disqualified from waiting week credit because she voluntarily resigned without good cause. Williams appealed that

determination to the Appeals Tribunal, which heard testimony from Williams, Employer's director, Ms. Collins, and an assistant teacher, Ms. Brown.

Williams testified that Employer frequently exceeded child-to-staff ratios, neglected to conduct mandatory background checks on employees and volunteers, and insisted that staff answer all phone calls, forcing them to leave children unattended. Williams's classroom ratio was 1:10 or 1:16 depending on the ages of the children at a given time,[1] but she sometimes had as many as 26 children in her room. Williams raised her concerns privately and at staff meetings in March and May 2013. Collins recalled only the latter and responded that Employer was in compliance by virtue of state authorization for "overlap capacity," which allows facilities to exceed overall licensed capacity by one-third for up to two hours but actually does not override individual classroom limits.[2] Williams also testified that Collins threatened to "harden her heart" upon further complaints. Williams submitted her resignation the day after that staff meeting. She conceded that she didn't contact the Department of Health and Senior Services before quitting but explained, "I just simply didn't agree with what was going on."

Collins testified that she hired Ms. Brown in February 2013 in order to assist Williams and other staff and satisfy ratio requirements. Ms. Brown testified that she wasn't familiar with the state regulations and didn't always count children to ensure compliance, but she sometimes helped Williams when there were over 20 children in the classroom. Employer's log indicates that Brown was off work at least 20 days when Williams worked during the relevant period. Collins testified that, although she insisted

---

[1] See 19 CSR 30-62-112.
[2] See 19 CSR 30-62.162.

that phones be answered by the third ring, she never instructed teachers to leave children unattended. Collins conceded that she failed to conduct a background check on Williams.

The Commission found Ms. Collins's testimony credible but also was "convinced, though, that [Williams] believed [E]mployer was not in technical compliance with certain regulations." It further found, "although during some hours of the day the number of children at the facility *exceeded the regulatory ratio*," Employer "*believed* it was in compliance ... due to [the] overlap capacity exception." (emphasis added) Ultimately the Commission deemed fatal that Williams "did not, prior to submitting her resignation, seek the assistance or intervention of the Missouri Department of Health and Senior Services … to resolve her concerns," further reasoning, "most average and reasonable employees would have sought the advice of the applicable regulatory agency, regarding both compliance and any personal liability questions, before simply quitting." Finally, the Commission did not find "reasonable or substantial" Williams's concern that Employer failed to perform her background check, as mandated by state regulation,[3] because her record was clean.

## Standard of Review

Our standard of review is set forth in §288.210 RSMo. An appellate court shall only review questions of law and may modify, reverse, remand or set aside an award only if the Commission acted without or in excess of its powers, the award was procured by fraud, the facts found by the Commission do not support the award, or there was not sufficient competent evidence in the record to warrant the making of the award. §288.210. We examine the whole record to determine whether there is sufficient competent and substantial evidence to support the award. Scrivener Oil Co. v. Div. of

---

[3] See 19 CSR 30-62.102(1).

3

Employment Sec., 184 S.W.3d 635, 638 (Mo. App. S.D. 2006). We defer to the Commission's determination regarding weight of the evidence and credibility of witnesses, and we will not substitute our own judgment for that of the Commission. Id. However, whether an employee had good cause to leave her employment is a question of law, which we review *de novo*. Quik'N'Tasty Foods, Inc. v. Division of Employment Security, 17 S.W.3d 620, 624 (Mo. App. W.D. 2000).

**Discussion**

Under Missouri employment security law, a claimant is disqualified from benefits if she "left work voluntarily without good cause attributable to such work or to the claimant's employer." §288.050.1(1). "Good cause" is determined on a case-by-case basis, and the employee bears the burden of proof. Darr v. Roberts Mktg. Grp., LLC, 428 S.W.3d 717, 724 (Mo. App. E.D. 2014). Good cause consists of circumstances that would cause a reasonable person in a similar situation to leave employment. Id. Those circumstances must be real, not imaginary, substantial, not trifling, and reasonable, not whimsical. Id. The circumstances must be so compelling that a reasonably prudent person would be justified in terminating employment. Id. Finally, an essential element of good cause is good faith; the employee must prove that she made an effort to resolve the issue before quitting. Id.

Williams asserts that the Commission erred in determining that she lacked good cause to resign in that Employer was actually in violation of state regulations, regardless of its mistaken belief to the contrary. Williams further asserts that the Commission erred by requiring that she contact the state regulatory agency (in this case DHSS) as a criterion of good faith.

4

In support of her position, Williams cites <u>Stevinson v. Labor and Industrial Relations Comm'n, Div. of Employment Sec.</u>, 654 S.W.2d 373 (Mo. App. S.D. 1983). There, a trucker was required to haul freight above the legal maximum. His employer claimed to have permits from county commissioners to cross bridges along his route, but none were adduced, and the court found no legal authority for such permits under applicable law. The court opined, "it can scarcely be debated that, where one is called upon to repeatedly violate the law, he has good cause to terminate his employment." <u>Id</u>. at 375. The employer also impugned the claimant's effort to resolve the conflict, but the court found "apparent [from the evidence] that the employer was not going to change its manner of operating." <u>Id</u>. Similarly here, Employer deemed itself in compliance with state regulations despite its actual non-compliance, and Collins conveyed that she would "harden her heart" in the face of further complaints.

Williams also relies on <u>Tin Man Enterprises, Inc. v. Labor and Industrial Relations Comm'n</u>, 866 S.W.2d 147 (Mo. App. E.D. 1993). There, three employees simultaneously resigned due to hazardous working conditions. The employer disputed their good faith in that their previous complaints to management were minimal and they didn't contact OSHA before quitting. This court noted, however, that the problems were obvious and continuous, management had rejected their complaints, and "there is no requirement that an employee must complain to OSHA before quitting employment." <u>Id</u>. at 149. The foregoing cases do not support the Commission's sole rationale that Williams lacked good cause because she failed to contact DHSS.

In response, the Division defends the Commission's reliance on <u>Central Missouri Paving Co., Inc. v. Labor and Industrial Relations Comm'n</u>, 575 S.W.2d 889 (Mo. App.

1978). There, the parties disputed whether the prevailing wage law was applicable to the work in question, and the law itself was unclear. The employer stopped paying workers the prevailing wage, so three employees issued an ultimatum and soon after resigned. On those facts, the court held that the employees should have made a greater effort to discuss the problem with the employer or consult the state highway commission before quitting. Unlike Central Paving, here there is no dispute that Employer *was* in violation of state regulations and further dialogue with Employer was futile. On the present facts, the Commission's determination that Williams lacked good faith because she failed to contact DHSS before resigning does not comport with Missouri precedent as stated in Stevinson and Tin Man and therefore warrants reversal.

Although not addressed by the Commission in its decision, the Division also argues that Williams's separation should be deemed purely voluntary, without even reaching a good-cause analysis, because she didn't specify an attributable reason for her departure in her formal resignation letter. Williams's letter simply stated that she wished to explore another opportunity, her "tenure at [Employer] had challenges," and she thanked Employer for the experience. In turn, Employer provided two glowing letters of reference. The Division would have the court turn these facts against Williams to hold that her letter constitutes a voluntary quit wholly absent of good cause. This implication - that an employee must burn bridges and blow whistles in order to qualify for unemployment compensation - ignores reality and an established legal framework. The General Assembly expressly intended that Chapter 288 "be liberally construed to accomplish its purpose to promote employment security … by providing for the payment of compensation to individuals in respect to their compensation." §288.020.2. To the

same end, Missouri precedent mandates that §288.050.1(1) be "strictly and narrowly construed in favor of finding that an employee is entitled to compensation." Darr v. Roberts Marketing Group, LLC, 428 S.W.3d 717 (Mo. App. E.D. 2014). Though described in opposing terms, both statute and jurisprudence prescribe standards favoring the employee.

Moreover, the Commission didn't consider Williams's letter in a vacuum, as the Division advocates, but instead examined the whole record and found that Williams resigned due to Employer's violations of classroom ratios, a phone policy that forced staff to leave children unattended, Collins's threat to "harden her heart" against further complaints, and Employer's failure to conduct mandatory background checks. Though the Commission ultimately found some of Williams's complaints immaterial, it nonetheless accepted them as sincere for purposes of its good cause analysis. "The causal connection between [a claimant's] quitting and [her] reason for doing so is a finding of fact which will not be disturbed by this court when such a finding, as in this case, is supported by the record." Tin Man, 866 S.W.2d at 150.

Finally, the Commission's specific findings about Williams's complaints do not undermine their validity for purposes of good cause. First and critically, though the Commission found that "Employer *believed* it was in compliance with such regulations," it also found that Employer was *actually* in violation of them. (Specifically, the Tribunal noted that, "during some hours of the day the number of children at the facility exceeded the regulatory ratio.") Second, the Commission's finding that Collins didn't expressly *instruct* staff to leave children unattended does not belie Williams's testimony that they were forced to do so as a practical result of Collins's strict phone policy. Third, though

7

the Commission found that Collins's "'harden my heart' comment was not intended as a threat," the implicit finding that Collins *made* the comment supports Williams's contention that further attempts at resolution would have been futile. Finally, the Commission's finding that Employer's failure to complete a background check on Williams was not a reasonable or substantial concern ignores the gravity of Employer's regulatory violation in this respect, the larger pattern of Employer practices depicted by the record as a whole, and thus the full context of Williams's decision to separate.

In sum, the facts in the record support the Commission's determination that Williams resigned for reasons attributable to Employer. As a matter of law, however, the Commission erred in concluding that Williams lacked good cause to resign.

### Conclusion

The Commission's decision is reversed and the cause is remanded for entry of an award of unemployment compensation benefits.

_____
CLIFFORD H. AHRENS, Judge

Lawrence E. Mooney, P.J., concurs.
Glenn A. Norton, J., concurs.