

# In the Missouri Court of Appeals
# Eastern District

## DIVISION TWO

| | | |
|---|---|---|
| ZACHARY SMITH, | ) | No. ED102383 |
| | ) | |
| Appellant, | ) | Appeal from the Labor and Industrial |
| | ) | Relations Commission |
| vs. | ) | |
| | ) | |
| GREYHOUND BUS COMPANY and | ) | |
| DIVISION OF EMPLOYMENT SECURITY, | ) | |
| | ) | |
| Respondents. | ) | Filed: June 16, 2015 |

## Introduction

Zachary Smith (Claimant) appeals the decision of the Labor and Industrial Relations Commission (Commission) denying his claim for unemployment compensation benefits. The Commission determined that Claimant was disqualified from receiving benefits because he voluntarily quit his job without good cause attributable to his work or the employer. We affirm.

## Factual Background

Claimant began working for the Greyhound Bus Company (Employer) as a student trainee on January 28, 2014. Claimant was required to complete four weeks of training before he could be hired as a motor coach driver for the bus company. For the first two weeks of training, Claimant was sent to Atlanta for classroom instruction and driver training. He then returned to

St. Louis to complete two more weeks of "on-the-job" driver training. On February 25, 2014, Claimant was scheduled to complete a roundtrip route from St. Louis to Columbus, Ohio. Although Claimant was scheduled to depart St. Louis at 11:35 p.m., the bus ended up leaving St. Louis between 12:30 a.m. and 1:00 a.m. on February 26, 2014, due to mechanical problems. The bus arrived in Columbus sometime after 10:00 a.m., on February 26, 2014, and departed later that night, arriving back in St. Louis the next morning on February 27, 2014. On February 28, 2014, Claimant called his shift manager, Tonya Reed, and notified her that he was leaving the training program and would not be returning to work. Claimant did not offer any reason for leaving other than indicating that the job "wasn't for him."

Claimant subsequently filed a request for unemployment benefits with the Division of Employment Security (Division). A division deputy determined that Claimant was not disqualified from receiving unemployment benefits after finding that Claimant quit his job because he "did not receive breaks or lunch" and was "so tired" that he would "nod off" and he "did not feel safe doing the job." Employer appealed and a hearing was set before the Appeals Tribunal.[1] After Claimant failed to appear at the hearing, the Appeals Tribunal issued a decision adverse to him, but later granted Claimant's request for another hearing after determining that he had not received proper notice. A second hearing was set for July 2014.

At the July hearing before the Appeals Tribunal, Claimant testified that during the last hour of the trip to Columbus, he began to get drowsy and "nodded off" several times. Claimant said that he asked the supervising trainer on board the bus to relieve him, but the trainer responded that if he relieved Claimant, he would have to "write [Claimant] up." Consequently, Claimant said that he continued driving and completed the route himself. Claimant explained

---

[1] In a letter contesting the deputy's determination, Employer stated that Claimant was never hired as a driver for the company because he never completed the required training. In addition, Employer challenged as untrue Claimant's assertion that he was expected to drive "24 hours" or more.

that he was "basically, a nine-to-five person" who was used to having undisturbed breaks on other jobs and that he would never have worked for Employer had he been told when he applied for the job that he would not receive undisturbed coffee and lunch breaks.

Claimant acknowledged that the bus route to Columbus included two scheduled stops, but said he was too busy performing other duties to take undisturbed breaks during those stops. Claimant also complained that he was forced to drive "ratty" busses that were unsafe. Specifically, he indicated that before departing for Columbus, the brakes had to be drained to prevent them from freezing. He also indicated that on another occasion, he had complained to a trainer that there was "too much play" in the steering wheel.

Barbara Boyd testified on behalf of Employer. Ms. Boyd was the operational manager for the bus company and Claimant's immediate supervisor. She testified that at the time of his departure, Claimant was still a student trainee who had not yet been hired as a driver. Ms. Boyd recalled that while Claimant had mentioned on one occasion that he was not used to driving at nighttime, he never complained about not receiving breaks during his shift or indicate that he was thinking about quitting. Ms. Boyd also said that she had explained to Claimant the importance of securing sufficient rest when arriving at destinations. Ms. Boyd also testified that drivers are allowed to take breaks during stops and that the trip to Columbus included two scheduled stops – a 30-minute stop in Effingham, Illinois, and a 15-minute stop in Dayton. In addition, Ms. Boyd explained that drivers are required to keep a daily log book and that it is the driver's responsibility to make sure they do not exceed the maximum amount of driving hours. Ms. Boyd also said that Claimant never informed her about any problems concerning the brakes on the bus.

Following the hearing, the Appeals Tribunal reversed the deputy's determination after concluding that Claimant was disqualified for benefits because he voluntarily quit his job without good cause attributable to his work or the employer. The Appeals Tribunal found that Claimant failed to prove that he was entitled to undisturbed 15-minute and 30-minute breaks and the fact that Claimant did not receive the desired breaks did not constitute good cause for quitting. In addition, the Appeals Tribunal found that Claimant had not exercised good faith because he failed to present his concerns to Employer before quitting. The Appeals Tribunal further found that there was no evidence that Employer had represented to Claimant that he would be entitled to undisturbed coffee and lunch breaks when he applied for the job. Claimant appealed to the Labor and Industrial Relations Commission, which adopted and affirmed the decision of the Appeals Tribunal. Claimant appeals.

**Standard of Review**

Appellate review of the Commission's decision denying benefits is governed § 288.210, RSMo,[2] which reads, in pertinent part:

> The findings of the commission as to the facts, if supported by competent and substantial evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the appellate court shall be confined to questions of law. The court, on appeal, may modify, reverse, remand for rehearing, or set aside the decision of the commission on the following grounds and no other:
>
> (1) That the commission acted without or in excess of its powers;
>
> (2) That the decision was procured by fraud;
>
> (3) That the facts found by the commission do not support the award; or
>
> (4) That there was no sufficient competent evidence in the record to warrant the making of the award.

---

[2] All statutory references are to RSMo (Supp. 2014), unless otherwise specified.

*Ayers v. Sylvia Thompson Residence Center*, 211 S.W.3d 195, 197-98 (Mo. App. W.D. 2007).

We will affirm the Commission's decision if we find, upon a review of the whole record, that there is sufficient competent and substantial evidence to support the Commission's decision. *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 223 (Mo. banc 2003). "We defer to the Commission on the resolution of conflicting evidence regarding a factual issue, the weighing of the evidence, and the credibility of witnesses." *O'Neal v. Maranatha Village, Inc*., 314 S.W.3d 779, 782 (Mo. App. S.D. 2010) (citation omitted). Questions of law are reviewed *de novo*. *Id*.

**Discussion**

In his sole point on appeal, Claimant contends that the Commission erred in finding that he did not have good cause to quit his job. Specifically, Claimant asserts that the Commission's finding is "contrary to the law" because Claimant acted reasonably and in good faith in terminating his employment in that the evidence showed that he was "forced" to drive buses "while sleepy." He also claims that he was forced to drive unsafe buses.[3] In response, the Division asserts that the Commission properly determined that Claimant was not entitled to benefits because there was competent and substantial evidence to support its finding that Claimant voluntarily quit his job without good cause. We agree.

Section 288.050.1(1) disqualifies a claimant from receiving unemployment benefits if the claimant left work voluntarily without good cause attributable to his work or the employer. The claimant has the burden of demonstrating good cause for his voluntary departure from work.

---

[3] Other than his own statements, Claimant presented no evidence at the hearing to demonstrate that he was forced to drive unsafe buses. The record also shows that Claimant did not inform either his shift manager or his immediate supervisor of any bus safety concerns. Moreover, this was not the reason for quitting given by Claimant on the "Division of Employment Security" questionnaire form he completed. In two separate responses on that form, Claimant specified that the reason he quit (and the "specific incident" causing him to quit) was because he received "[n]o coffee breaks or lunch breaks." He also indicated that he was "on-call 24-hours a day, 7 days a week."

5

*Cooper v. Hy-Vee, Inc.*, 31 S.W.3d 497, 502 (Mo. App. W.D. 2000). Whether an employee's reason for quitting employment constitutes "good cause" is a question of law, which we review *de novo*. *Prock v. Hartville Feed, LLC*, 356 S.W.3d 839, 841 (Mo. App. S.D. 2012).

Missouri courts have interpreted "good cause" to mean "cause that would motivate the average able-bodied and qualified worker in a similar situation to terminate his or her employment." *Miller v. Help At Home, Inc.*, 186 S.W.3d 801, 808 (Mo. App. W.D. 2006). Conditions that motivate an employee to quit his job "must be real, not imaginary, substantial, not trifling, and reasonable, not whimsical, and good faith is an essential element." *Id.* "Good cause is limited to instances where external pressures are so compelling that a reasonable person would be justified in terminating employment." *Davis v. J.P. Collier, Inc.*, 429 S.W.3d 508, 510 (Mo. App. E.D. 2014).

"Good cause" must be attributable to the employee's work or his employer. *Hessler v. Labor and Indus. Relations Comm'n*, 851 S.W.2d 516, 518 (Mo. banc 1993). To prove "good cause," the claimant must establish two elements: reasonableness and good faith. *McQuinn v. Lawson Equip.*, 985 S.W.2d 443, 444 (Mo. App. W.D. 1999). To establish "reasonableness," a claimant must demonstrate that the employment circumstances would cause a reasonable person to terminate their employment rather than continue working. *Kimble v. Div. of Emp't Sec.*, 388 S.W.3d 634, 641 (Mo. App. W.D. 2013). "Reasonableness requires that the employee prove that his concerns are real or that any reasonable worker would have these concerns." *See Miller*, 186 S.W.3d at 809. "Good faith is an essential element of good cause, and to establish it the employee must prove that he made an effort to resolve the troublesome situation before terminating his job." *Prock*, 356 S.W.3d at 846 (citation omitted). Unless it is clear that efforts

6

to resolve the matter would be futile, the claimant "must demonstrate his own good faith in trying to resolve the situation before resorting to the extreme measure of quitting his job." *Id.*

Here, Claimant contends that he acted reasonably when he quit because Employer's failure to provide him with undisturbed 15 and 30-minute breaks during the trip to Columbus resulted in Claimant being "forced" to drive "while sleepy," which endangered his own life and the lives of the passengers on the bus. He maintains that a reasonable person would have quit under these circumstances.

As noted, the Commission found that the fact that Claimant did not receive an undisturbed coffee and lunch break during his shift did not constitute "good cause" to quit his job. We agree. The record simply does not support Claimant's assertion that he was "forced" to drive buses while sleepy. The record shows that the bus route to Columbus included at least two scheduled stops at different terminals – a 30-minute and a 15-minute stop. In addition, the record reflects that Claimant had the opportunity to be relieved during the trip, but that he decided against it because he did not want to be "written up." Clearly, Claimant had the choice to either accept relief or continue driving. As the Division points out, the reasonable response under these circumstances would have been for Claimant to accept relief and take a break (and risk a "write-up") and then discuss the matter later with his supervisor. By contrast, risking the safety of everyone on board the bus to avoid being "written up" simply defies all reason and common sense.

Claimant also maintains that he acted in "good faith" because he attempted to communicate his concern about driving drowsy to a trainer before quitting and that any further attempt to express his concerns to Employer would have been futile.[4] We disagree.

---

[4] In support, Claimant cites *Baby-Tenda Corp. v. Hendrick*, 50 S.W.3d 369, 378 (Mo. App. W.D. 2001) and *Williams v. Favored, LLC*, 443 S.W.3d 716 (Mo. App. E.D. 2014). Both cases are factually distinguishable and do

As noted, a claimant must demonstrate that he acted in good faith by making an effort to resolve the situation before quitting his job. *See Prock*, 356 S.W.3d at 846. Simply put, "[g]ood faith requires that an employee express his concerns to provide the employer an opportunity to correct or ameliorate conditions that the employer didn't know were problematic." *Davis*, 429 S.W.3d at 511 (citation omitted). An employee's failure to attempt to resolve matters that were given as a reason for quitting a job indicates a lack of good cause and justifies the denial of benefits. *Schuenemann v. Route 66 Rail Haven, Ltd.*, 353 S.W.3d 691, 697 (Mo. App. S.D. 2011) (quotation and citation omitted).

The record supports the Commission's finding that Claimant's decision to quit was not made in good faith because he did not raise his concerns with Employer before quitting. Claimant acknowledged that he did not present his concerns to the shift manager or his immediate supervisor before he quit. When asked why he did not express his concerns to Employer, Claimant testified that he was still in training and wanted the job, so he "kept his mouth shut." In addition, on the questionnaire form completed by Claimant after his departure, he admitted that he did "nothing" to resolve the situation before quitting because "th[e] company has been operating like this for a long time." The failure to communicate his concerns to his supervisor before quitting effectively deprived Employer of the opportunity to resolve the situation. Accordingly, the Commission did not err in concluding that Claimant voluntarily quit his job without good cause. Point denied.

---

not assist Claimant. Unlike the instant case, in *Baby-Tenda Corp.*, the Commission found that the claimant had good cause to quit her job after discovering that her employer was involved in illegally removing asbestos from insulation at its facility and that OSHA had been notified of the alleged violations. 50 S.W.3d at 375-76. Similarly, in *Williams*, the Court found that a certified early childhood teacher had good cause to quit her job at a daycare facility where the employer was violating multiple state regulations. 443 S.W.3d at 717. By contrast, in the instant case, Claimant did not identify any laws that were violated, nor has he demonstrated that it would have been futile to express his concerns to Employer before quitting. Claimant's conclusory assertion that the company had a "history of drivers falling asleep at the wheel" does not excuse his failure to communicate his concerns to Employer before quitting.

## Conclusion

For the foregoing reasons, the Commission's decision is affirmed.

_____
Philip M. Hess, Judge

Sherri B. Sullivan, P.J. and
Mary K. Hoff, J. concur.

9