

# In the Missouri Court of Appeals
## Eastern District

### DIVISION FOUR

| | |
|---|---|
| TAMMY A. MORRE, ) | No. ED111031 |
| ) | |
| Appellant, ) | Labor and Industrial Relations Commission |
| ) | |
| vs. ) | |
| ) | |
| MISSOURI GAMING COMMISSION ) | |
| AND DIVISION OF EMPLOYMENT ) | |
| SECURITY, ) | |
| ) | |
| Respondents. ) | Filed: June 6, 2023 |

Kelly C. Broniec, P.J., Philip M. Hess, J., and James M. Dowd, J.

### Introduction

In this unemployment compensation case, Tammy Morre appeals the decision of the

Labor and Industrial Relations Commission ("Commission") disqualifying her from

unemployment benefits based on its finding that she was terminated for misconduct from her

employment with the Missouri Gaming Commission ("MGC"). Morre argues on appeal: (1) that

the Commission's decision is not supported by sufficient factual findings of a specific incident of

misconduct or that Morre intended to commit the alleged misconduct; and (2) that there was not

competent and substantial evidence to support the decision.

We affirm. There are sufficient factual findings in the Commission's decision as well as

competent and substantial evidence in the record to support that Morre committed misconduct

pursuant to subparagraphs (a) and (e) of section 288.030.1(23) because she knowingly violated MGC's expected standards, which were communicated to her on multiple occasions by her direct supervisor, and because she violated numerous MGC policies relating to, among other things, interpersonal conduct, attendance and scheduling, and anti-harassment.

## Background

On November 21, 1994, appellant Tammy Morre began working as an administrative support professional for the Missouri Gaming Commission, a state agency that licenses and regulates casino gambling, bingo, and fantasy sports. In 2020, Morre came under the direct supervision of the assistant director of enforcement, Terri Hutchison, who maintained extensive records of her meetings and interactions with Morre. Hutchison's notes reflected that over the course of a year's time, she repeatedly reminded Morre to request prior approval for vacation and flex time, which Morre consistently failed to do; repeatedly reminded Morre not to check work e-mails during off-hours or while on vacation; witnessed and experienced Morre's hostility, anger, and disrespect towards supervisors and others; heard from other employees regarding their reluctance to work with Morre; and repeatedly asked Morre to cross-train others in an effort to improve organizational efficiency, which Morre resisted for fear of being replaced in her job.

In August 2021, Hutchison compiled an 18-page memorandum outlining several of MGC's employee policies and examples of Morre's above conduct that violated those policies. Hutchison sent the memorandum to the executive director, Peggy Richardson, along with her suggestion that Morre be discharged. Richardson terminated Morre's employment with the MGC on August 25, 2021. At that time, Morre was placed on paid administrative leave pending her appeal of the termination decision. On September 29, 2021, Morre's termination was affirmed by the commissioners of the MGC.

Before her appeal was resolved, Morre filed for unemployment compensation with the Missouri Division of Employment Security. On September 16, 2021, she was determined eligible for benefits by a Division deputy. The MGC appealed the determination to the Division's Appeals Tribunal, arguing that Morre was discharged for misconduct and thereby disqualified from unemployment benefits.

The Appeals Tribunal conducted a three-part telephone hearing[1] at which Hutchison, Richardson, and Morre testified. On March 17, 2022, the Appeals Tribunal issued its decision reversing the deputy's determination and finding that Morre "was discharged for insubordination with her supervisors and other employees" as evidenced by Hutchison's notes and memorandum identifying Morre's "violations of MGC's policies."

Morre filed her application for review to the Commission. On August 25, 2022, the Commission affirmed and adopted the Appeals Tribunal's decision. Morre now appeals.

## Standard of Review

Our review of the Commission's decision is governed by the Missouri Constitution and section 288.210 of the Missouri Employment Security Law. We review whether the Commission's decision is "authorized by law" and "supported by competent and substantial evidence upon the whole record." Mo. Const. art. V, § 18. Under section 288.210,[2] we may modify, reverse, remand for rehearing, or set aside the Commission's decision if it is found (1) that the Commission acted without or in excess of its powers; (2) that the decision was procured by fraud; (3) that the facts found by the Commission do not support the decision; or (4) that there was not sufficient competent evidence in the record to support the decision. When, as here, the

---

[1] The hearing was completed over the course of three forty-five-minute meetings, one each on October 12, 2021, December 15, 2021, and January 27, 2022.
[2] All statutory references are to the Revised Statutes of Missouri (2016).

Commission adopts the decision of the Appeals Tribunal, we consider that decision to be the Commission's for purposes of review. *Walker v. John J. Smith Masonry Co.*, 654 S.W.3d 123, 126 (Mo. App. E.D. 2022).

In the absence of fraud, we accept the Commission's factual findings so long as they are supported by competent and substantial evidence in the record. *Mickles v. Maxi Beauty Supply, Inc.*, 566 S.W.3d 274, 277 (Mo. App. E.D. 2019). Whether competent and substantial evidence supports the award is determined by examining the evidence in the context of the whole record. *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 223 (Mo. banc 2003).

We give deference to the Commission's "resolution of conflicting evidence regarding a factual issue, the weighing of the evidence, and the credibility of witnesses." *Smith v. Greyhound Bus Company*, 477 S.W.3d 55, 59 (Mo. App. E.D. 2016) (citation omitted). Therefore, "[i]f the Commission has reached one of two possible conclusions as to a finding of fact, the reviewing court will not reach a contrary conclusion even if the court could reasonably do so." *Hoeft v. True Manufacturing Company, Inc.*, 604 S.W.3d 337, 339 (Mo. App. E.D. 2020).

Questions of law are reviewed *de novo*. *Difatta-Wheaton v. Dolphin Cap. Corp.*, 271 S.W.3d 594, 595 (Mo. banc 2008). "Whether the Commission's findings support the conclusion that a claimant engaged in misconduct connected with his or her work is a question of law." *Fendler v. Hudson Services*, 370 S.W.3d 585, 589 (Mo. banc 2012) (internal quotation omitted).

**Discussion**

We address Points I and II together because they are so closely related. Morre first argues that the Commission's decision violated section 288.210(3) because the factual findings were not sufficiently specific to support that Morre engaged in misconduct as defined in

subparagraphs (a) or (b) of section 288.030.1(23). Those subsections require the employee to have acted knowingly in disregard of the employer's interests or standards, or to have knowingly disregarded the employee's obligations and duties to the employer. Not only do we disagree with Morre's contention that her actions may *only* be reviewed for misconduct under subparagraphs (a) or (b)—because we find that subparagraphs (a) and (e) apply, but not (b)—we also disagree with Morre that the Commission failed to identify particular acts of misconduct sufficient to support its decision.

"A claimant is not entitled to unemployment benefits if the claimant . . . was discharged for misconduct connected with the claimant's work." *Cook v. Accord Building Services, LLC*, 481 S.W.3d 893, 901 (Mo. App. E.D. 2016); Section 288.050.2. Generally, a claimant "bears the burden of demonstrating that he or she is entitled to unemployment benefits," however, "when the employer claims that the applicant was discharged for misconduct, the burden shifts to the employer to prove the claim of misconduct connected with work." *Weppner v. Shade Tree Serv. Co.*, 520 S.W.3d 524, 531 (Mo. App. E.D. 2017).

There are five statutory criteria for determining whether a claimant committed misconduct, two of which are relevant to this appeal—sections 288.030.1(23)(a) and (e).[3] Section 288.030.1(23)(a) requires an employer to "establish either a knowing or deliberate disregard of an employer's interest or standard," while section 288.030.1(23)(e) defines misconduct as "a claimant's violation of an employer's rule." *Con-Way Truckload, Inc. v. Wood*, 511 S.W.3d 478, 485 (Mo. App. W.D. 2018). Subparagraph (e) "has the purpose and

---

[3] We do not find section 288.030.1(23)(b), which defines misconduct as "carelessness or negligence in such degree or recurrence as to manifest . . . a knowing disregard of the employer's interest or of the employee's duties and obligations to the employer," to be relevant to this appeal.

5

intent in allowing employers to promulgate clear rules that guide employee conduct and to deny benefits to employees who violate such rules." *Wayne v. Division of Employment Security*, 600 S.W.3d 29, 37 (Mo. App. W.D. 2020). Notably, it does not provide a scienter requirement and instead shifts the burden back to the employee to show either (1) that she did not know of the rule requirement, (2) that the rule is unlawful, or (3) that the rule is unfairly or inconsistently enforced. *Con-Way Truckload, Inc.*, 511 S.W.3d at 485–86 (citing *Esquivel v. Hy-Vee, Inc.*, 498 S.W.3d 832, 836–37 (Mo. App. W.D. 2016)).

Here, the Commission's decision contained factual findings sufficient to support that Morre committed misconduct under both definitions. First, the Commission found that Morre violated at least five specific MGC policies and procedures, all of which she had been notified of at various times "by email, by direct supervisors, and through team meetings." That Morre was informed of the employer's policies, particularly as they related to her workplace conduct, and continued to violate them satisfies section 288.030.1(23)(a)'s requirement that she knowingly disregarded the employer's standards. Furthermore, the Commission found, based on Richardson's testimony, that the final decision to terminate Morre was "based on [her] violations of [MGC's] policies." This finding alone is sufficient to satisfy section 288.030.1(23)(e). Regarding the exceptions contained in that subparagraph, Morre does not claim ignorance of the employer's policies, that they are unlawful, or that they were unfairly applied. Point I is denied.

Morre's second point argues that the Commission's decision violates section 288.210(4) because it is not supported by competent and substantial evidence that she was discharged for misconduct. Morre claims that she was terminated for "failing to meet the performance standards of MGC's then-leadership" and that the MGC's evidence to the contrary is "simply not credible." We disagree because sufficient competent evidence on the record as a whole supports

6

that Morre was discharged for misconduct as defined by section 288.030.1(23)(a) and (e). Moreover, Morre's challenge to the credibility of the evidence defies our standard of review which requires that we defer to the Commission when evaluating the weight of the evidence and the credibility of witnesses. *Menley v. JJF & C, LLC*, 637 S.W.3d 687, 690 (Mo. App. E.D. 2021). We will not disturb those findings on appeal. *Id.*

At the hearing, the MGC submitted into the record eighteen pages of notes from Hutchison's meetings with Morre between August 2020 and August 2021. The record also included the MGC's internal policies and procedures and copies of specific sections that Morre violated. While Morre now claims that the eighteen pages of notes were inadmissible hearsay, she did not object to their introduction and the valid business records affidavit overcame any hearsay objection. As for the copies of the policies and procedures, Morre testified that she was aware of the MGC's policies. Hutchison also testified at the hearing and was available to be cross-examined as to her notes. The Commission relied on this evidence in reaching its decision.

Section 1-02 of the MGC's policy requires employees not to engage in conduct that "adversely affects or impairs the operation, morale, or adversely affects the performance of employees of the Commission." Hutchison repeatedly asked Morre to cross-train other employees, informing her that "the goal of the agency is not to have single point of failure" and that "if something happened to [Morre] . . . someone has to know what she does and be able to step in." However, Morre failed to cross-train other MGC employees for months and "admitted she likes keeping her job to herself so she couldn't be replaced." Hutchison noticed that Morre was keeping things to herself and unwilling to share information with other employees.

Section 6 of the MGC's policies states that "employees . . . shall not . . . use their personal electronic devices to perform work activities (e.g., reviewing MGC e-mail) outside of

7

their regularly assigned work hours . . ." Hutchison first informed Morre of this rule on August 27, 2020, telling Morre that she "shouldn't be looking at her email when she is on vacation." On January 28, 2021, Morre was reminded again "not to answer or get on work email after her work hours" and that she must stop. On July 30, 2021, Hutchison again noted that Morre "was doing work, reading work emails, while she was scheduled off," and that Morre "was told multiple times by [multiple supervisors] . . . that when she was off work she was not to read or do any work." Hutchison specifically noted Morre's continued failure to follow these directions.

Section 8-03 of the policy provides that "flexible work schedules require the approval of the Executive Director . . . with the recommendation of the employee's immediate supervisor." Hutchison first informed Morre about MGC's flex time policy on August 27, 2020, and told Morre that if "[she] needs to flex for some reason to let [Hutchison] know in advance." Hutchison reminded Morre of this policy on September 16, 2020, after Morre flexed her work schedule without prior approval, and then again on September 23, 2020, October 1, 2020, and July 16, 2021, following multiple additional violations of the policy.

Section 8-15 establishes the MGC's anti-harassment policy and defines harassment as conduct "severe or pervasive enough that a reasonable person would consider the workplace intimidating, hostile, or abusive." The policy identifies "hostile work environment" as that which results "when one's behavior within the workplace creates an offensive and unpleasant working environment." At a meeting on September 17, 2020, Morre "was very hostile and wouldn't speak. Everyone noticed her temper and how mad she was." Again, on September 29, 2020, Morre "was upset and hostile in [a] meeting and she got loud and disrespectful" with another employee and she "raised her voice and became hostile to [the Deputy Director]." One employee told Hutchison that she "did not want to cause any issues" with Morre and that

8

disagreements with Morre are "not worth a fight." Other employees informed Hutchison that "they do not want to work with Morre," that working with Morre would be "an unpleasant working environment," and that Morre is "mean." On July 23, 2021, Hutchison noted that Morre "has created a workplace that is intimidating to others; so much so that employees will not apply for a job posting that would be for a promotion and pay increase because they would have to work with" Morre.

This record of events, which the Commission relied on in reaching its conclusion, provides sufficient competent evidence that Morre was discharged from her employment with the MGC for not only violating the employer's rules, but doing so with a knowing disregard for the employer's standards. Point II is denied.

### Conclusion

For the reasons stated above, we affirm the Commission's decision.

James M. Dowd, Judge

Kelly C. Broniec, P.J., and
Philip M. Hess, J. concur.